**BURLESQUE ARTISTS ASSOCIATION**

v.

**I. HIRST ENTERPRISES, INC.,**
**Appellant,**
and
**Jay Hornick.**

**No. 12836.**

United States Court of Appeals
Third Circuit.

Argued April 21, 1959.

Decided May 19, 1959.

Harry W. Steinbrook, Philadelphia, Pa. (Blanc, Steinberg, Balder & Steinbrook, Philadelphia, Pa., on the brief), for appellant.

Tom P. Monteverde, Philadelphia, Pa. (Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., on the brief), for appellee.

Before MARIS, GOODRICH and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This is a suit for breach of contract. The Burlesque Artists Association, a voluntary association of theatrical performers in the burlesque field, sued the defendant, I. Hirst Enterprises, Inc., for breach of contract by which the defendant had agreed during the contract period (February 21, 1951 through April 30, 1953) that persons appearing in the theaters for which defendant was the bargaining agent would become members of Burlesque Artists "to the extent permitted by law." [1] Federal jurisdiction is based on section 301 of the Labor-Management Relations Act, 61 Stat. 156 (1947), 29 U.S.C.A. § 185 (1956). Plaintiff recovered a judgment for $15,000 from which the defendant appeals. While the appellant states that the appeal concerns six questions we think that the number may be reduced to three. The first has to do with the plaintiff's capacity to sue. The second has to do with the purported oral agreement subsequent to the written contract. The third has to do with the damages.

First, as to the plaintiff's capacity to sue. The plaintiff was formed as an unincorporated association in 1933. In March, 1934, after the plaintiff had been organizing burlesque theaters throughout the country, Burlesque Artists applied for and received a charter as an

---

1. The original complaint stated three claims. The first and third went out on a motion to dismiss. The middle claim was retained and is the one sued on.

Judgment was rendered only against I. Hirst Enterprises, Inc., and it alone appeals.

affiliate of an organization called Associated Actors and Artistes of America (known as "The Four A's"). This charter was in force at the time of the execution of the collective bargaining agreement already mentioned and also at the time the suit was instituted in 1954.

There was dispute as to whether this charter from The Four A's had been revoked. The witness Phillips, President and Executive Secretary of the plaintiff, claimed it had not been, although he said there was a lawsuit in another court pending at the time of the trial of this action concerning revocation of The Four A's charter to the plaintiff.

■ While there was a great deal of testimony and a great deal of discussion about this point we do not think it relevant to the decision of this case. Burlesque Artists was organized independently of The Four A's and was functioning when it received its charter from that organization. If the charter had been canceled Burlesque Artists was still an independent labor organization. It does not matter in this case whether the charter was in force at the time of the trial or not.

■ The question of the plaintiff's standing to sue was raised in the pleadings and evidence received about it at the trial. The trial judge gave the jury, at the request of the defendant, the terms of the Labor-Management Relations Act, and the question was left to the jury to determine in the light of the legal tests found in the statute.[2] The jury's verdict settles the factual matter. Since the judge took the law from the very words of the statute, there can be no doubt about the correctness of the submission to the jury.

We pass now to the parol evidence point. The 1951 contract was, according to the witness Phillips, entered into after many years of effort on the part of the plaintiff to obtain it. It was drawn, according to the testimony, by counsel for the defendant. It was two pages long. Several days after the execution of this contract, whether one week or two does not matter, there was alleged to have been a meeting, among representatives of the principals and their legal advisers, to discuss the way in which the provision for a "union shop" should be implemented. The method of implementation was not a subject which was covered in the original agreement, but was claimed by the plaintiff to be necessary in order to carry out the substantive provisions thereof.

There was testimony about this alleged oral contract offered, refused by the trial judge at first but subsequently admitted. The existence and terms of the agreement are corroborated by some letters back and forth between the parties and a later conference held in the office of the law firm now representing the plaintiff.

■ Admission of this testimony is strongly objected to by the defendant who claims it to be a violation of the parol evidence rule. There are two conclusive answers to this point. One is that the agreement as proved by the plaintiff did not contradict or change the promises in the original contract but simply implemented the execution of those promises. The second point is that the defendant is wrong in saying that the parol evidence rule applies to this situation. If the agreement was made it was subsequent to the execution of a contract. Subsequent agreements to written contracts may be made orally. The parol evidence rule is one of "integration." Preliminary negotiations, contemporaneous agreements, are washed up in the final integration of all these preliminary matters into one contract.

2. The trial judge charged that " 'The term "labor organization" means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.' " 61 Stat. 138 (1947), 29 U.S.C.A. § 152(5) (1956).

The Restatement of Contracts provides in pertinent part that " * * * all contemporaneous oral agreements relating to the same subject-matter; and also * * * all prior oral or written agreements relating thereto" are inoperative to add to or to vary an integrated agreement. Restatement, Contracts § 237 (1932). The same point of view is shown by the leading writers. 3 Corbin, Contracts §§ 573–75 (1951); 3 Williston, Contracts § 632 at p. 1817 (rev. ed. 1936).

■ The trial judge did not say, as the defendant suggests, that this alleged subsequent agreement constituted a valid contract. What he told the jury was that if they found the facts as the plaintiff claimed them to be then a valid addition to the original contract had been made. He left the question to the jury. There was no error concerning this matter.

The last point has to do with the measure of damages. How much did the plaintiff organization lose by the defendant's failure to insist that performers in the theaters covered by the agreement become members of Burlesque Artists? The defendant had records of who the performers were, what they got, and how long they played. But the defendant said these records were destroyed. Plaintiff claims that they were destroyed after the beginning of the lawsuit and in violation of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. Defendant says that this statute has nothing to do with private suits of the kind involved here. We do not need to decide whether the destruction of records called for by the Fair Labor Standards Act gives any additional strength to the plaintiff's case.

With the payrolls having disappeared, and we do not need to attribute fault to the defendant in this, it is obvious that some other form of proof would have to be made. This problem was discussed by this Court in Smith v. Onyx Oil And Chemical Co., 3 Cir., 1955, 218 F.2d 104, 110–111, 50 A.L.R.2d 216. See Robert H. Fox Co. v. Keystone Driller Co., 3 Cir., 1956, 232 F.2d 831, 835. The point is when the best proof possible is not obtainable the next best thing will have to be resorted to.[3]

■■ That was done here. The witness Phillips made estimates of what the take to Burlesque Artists would have been had all the persons required to join that organization joined it and paid. Then the plaintiff got an expert witness, a professor of mathematics, and he added his expert judgment to the problem, making allowances for the expenses of operations to take in this estimated amount in gross receipts. The jury came out with a figure something less than an optimistic estimate gave. We do not think there is fault to be found with the method of proving the loss and the results the jury reached. It should be borne in mind, of course, that a United States Court of Appeals has a very limited authority with regard to the amount of jury verdicts although no doubt they should correct error if the manner of arriving at them is incorrect. O'Toole v. United States, 3 Cir., 1957, 242 F.2d 308, 310; McKee v. Jamestown Baking Co., Inc., 3 Cir., 1952, 198 F.2d 551, 556–557; Trowbridge v. Abrasive Co. of Philadelphia, 3 Cir., 1951, 190 F.2d 825, 830.

The appellant makes general complaint about the judge's charge in handling the case. We have gone through the charge and much of the record. We do not find that the appellant's complaints are justified. Perhaps the trial judge used more words than was necessary in some spots. If so, he did it out of an obvious and abundant desire to play fair to both parties and not to have the jury take a prejudiced view against either side or its lawyer representative.

The trial took a long time. We are convinced that it was fair and impartial.

The judgment of the district court will be affirmed.

---

3. We do not mean to say that the next best thing will always do. It may be too far from adequate proof.