UNITED STEELWORKERS OF AMERICA, AFL–CIO, and Local No. 6 of the United Steelworkers of America, AFL–CIO, Appellants,

v.

NORTHWEST STEEL ROLLING MILLS, INC., a corporation, Appellee.

No. 18533.

United States Court of Appeals Ninth Circuit.

Nov. 12, 1963.

Kane & Spellman, and John D. Spellman, Seattle, Wash., for appellant.

Rosling, Williams, Lanza & Kastner, and DeWitt Williams, Seattle, Wash., for appellee.

Before CHAMBERS, ORR and BROWNING, Circuit Judges.

ORR, Circuit Judge.

Appellee as the employer and appellant as representative of its employees entered into an agreement whereby any grievances which might arise between them would be submitted to arbitration for settlement.[1]

1. "ARTICLE XI
"Adjustment of Grievances
"*Section* 1. Should any differences arise between the Company and the Union, or its members employed by the Company as to the meaning and application of the provisions of this Agreement, or as to any question relating to wages, hours of work and other conditions of employment of any employee, there shall be no suspension of work on account of such differences, but an earnest effort shall be made to settle them promptly and in accordance with the provisions of this Agreement in the following manner:

\* \* \*

"Third: In the event the dispute shall not have been satisfactorily settled the matter shall be submitted to arbitration under Section 2 of this Article.
"*Section* 2. In the event that a grievance shall not have been satisfactorily settled by the Union and the Company, the case in question with all records pertaining thereto can then be appealed to an arbitrator to be appointed by mutual agreement of the parties hereto. The arbitrator shall render a decision in line with the written terms of the contract and said decision shall be final. The expenses and salary incident to the service of the arbitrator shall be paid equally by the Company and the Union."

Sometime later appellee, hereafter the company, partially changed to automation in its manufacturing business. This resulted in displacement of some of its employees and reassignment of others. Discontent among those laid off and reassigned arose and several employees filed grievances alleging that the job reassignments were not in accord with the collective bargaining agreement then in force and effect. The particular grievances stressed a charged violation of the provision that in the event physical fitness and ability were equal, then length of continuous service was to govern in the case of a decrease in force.

The union requested the company to arbitrate in accordance with the agreement. The company refused. The union then filed an action in the State Court of Washington to compel the company to proceed to arbitrate in accordance with the agreement. During the pendency of the suit a stipulation was entered into that arbitration would be resorted to and that the state court action would be dismissed.

The stipulation pursuant to which this action was taken will be referred to as stipulation No. 1. It provided for the naming of three arbitrators to handle three sets of grievances. Only one of these sets of grievances, that arbitrated by Mr. Ross, is involved in the instant case. Stipulation No. 1 provided in part that "separate arbitration stipulations shall be submitted to each of the above named arbitrators listing the issues to be considered and determined by them as set forth above."

Pursuant to the terms of stipulation No. 1 a second stipulation was entered into for the grievances to be arbitrated by Mr. Ross. This will be referred to as stipulation No. 2. Stipulation No. 2 provided that:

"The matters submitted for arbitration involve the 'Grievances', copies of which are attached hereto.
* * *

"The questions submitted for arbitration are as follows:

"1. Did the company violate the Agreement of the parties dated July 7, 1960, (hereinafter referred to as the "Basic Agreement") in not selecting A. H. Garrioch, Earl Stockman, Charles V. Ward, and Wesley S. Miller to try out for positions in the Blooming Mill operated by the company, as claimed in the Grievances of said men attached hereto."

Three similar questions concerning other positions followed, and also a question asking whether certain grievances had been filed in a timely fashion.

Hearings were had and evidence taken by arbitrator Ross. He made a formal report on September 26, 1962, awarding positions or try-outs to certain complaining employees, with back pay in some cases.

■ The company declined to comply with the award. It took the position that the arbitrator had acted in excess of his authority; that by reason of the terms of stipulation No. 2 he was limited to answering the questions propounded therein and had no power to take remedial or affirmative action. The union thereupon brought an action in the United States District Court for the District of Washington to compel the company to accept the arbitration award.[2]

The company moved for summary judgment. Affidavits in support of and in opposition to the motion were filed. The trial court granted the motion and entered a summary judgment, taking the position that the parties had defined the issues within the four corners of stipulation No. 2 and that its terms were clear and unambiguous.

■ It is a familiar rule that summary judgment will not lie if an actual dispute of a material fact exists between

2. It was settled in Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) that the law applicable in cases, such as the present one, brought under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, is federal law, to be fashioned by the federal courts.

the parties.[3] From the complaint and the affidavits filed we think such a dispute is shown.

■ Under the issues present here there is a dispute as to the intent of the parties and their understanding of the function of the arbitrator in determining the questions presented in stipulation No. 2. We agree with the union that the entire agreement to arbitrate is not contained in stipulation No. 2. The second stipulation did not specify what set of rules the arbitrator was to apply in his determination of the rights of the parties, or what final effect his decision was to have, or who was to pay him. The collective bargaining agreement must be looked to to determine these questions.

■ The company contends that stipulation No. 2 limited the arbitrator to affirmative or negative answers to the questions therein presented. It can reasonably be said that the arbitration process would be an idle act insofar as the settlement of grievances is concerned if the company's view prevails here. As we look at the whole picture we find a desire for redress on the part of the employees for a violation of the agreement; a refusal by the company to comply with the arbitration provision; a suit to compel compliance; and its dismissal by an agreement to arbitrate with a stipulation as to what should be arbitrated. We cannot lightly conclude that at the last moment the union, disregarding the purpose of the arbitration, consented to its curtailment to the extent that the arbitration would not bind the parties to anything and would not be final. This would mean that the arbitration procedure was to encompass no more than the mouthing of impotent answers insofar as the set-

tlement of grievances was concerned. The agreement and stipulations should be read together to get the true meaning and intent of the parties. And when so read, it is not clear if stipulation No. 2 was intended merely to supplement the agreement and stipulation No. 1 by categorizing the fact questions for the arbitrator's convenience, or was meant to deprive the arbitrator of power to provide a remedy.

■ It is asserted in the union's affidavit that the company orally acquiesced in their view that stipulation No. 2 was designed only to outline the issues for the arbitrator. The company participated in the hearings and is alleged to have construed the proceedings as involving the remedies to be applied if a violation of the agreement was found. The attitude of a party as shown by his acts or words is a proper consideration in determining the meaning of an agreement where there is more than one possible interpretation.[4] What the company's attitude was and what it said and did, from which a determination can be made as to whether it considered the proceeding a full arbitration under the terms of the collective bargaining agreement, is in itself a disputed substantial question of fact appearing in the record before us.

■ Further, even if it could be said that the second stipulation was intended to strip the arbitrator of his power, the limitation contained therein could be waived by absence of objection on Northwest Steel's part when it became aware that the union and the arbitrator were proceeding on the theory that remedial power existed.[5] The union's affidavits present facts to support this theory. Northwest Steel, however, denies that the facts were such as to put it on notice of

---

3. Sartor v. Arkansas Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944); Osborn v. Boeing Airplane Co., 309 F. 2d 99 (9th Cir. 1962).

4. 4 Williston, Contracts, § 623 (3d ed. 1961); Pacific Portland Cement Co. v. Food Mach. & Chem. Corp., 178 F.2d 541 (9th Cir. 1949); Continental Assur. Co. v. Conroy, 209 F.2d 539 (3d Cir. 1954).

5. 4 Williston, Contracts, §§ 623 at 815–16, 591 (3d ed. 1961); Matanuska Valley Farmers Co-op. Ass'n v. Monaghan, 188 F.2d 906 (9th Cir. 1951) (modification of an agreement may be shown by conduct of the parties); Burlesque Artists Ass'n v. I. Hirst Enterprises, Inc., 267 F.2d 414 (3d Cir. 1959) (written contract may be modified by later oral agreement).

the construction placed on stipulation No. 2 and argues that waiver of its rights was thus impossible. This dispute in itself gives rise to controverted issues of fact which preclude the granting of summary judgment.

The judgment appealed from is vacated, and the cause is remanded to the District Court for further proceedings consistent with this opinion.