**LOCAL 4076, UNITED STEELWORKERS OF AMERICA, Plaintiff,**

v.

**UNITED STEELWORKERS OF AMERICA, AFL–CIO, Local 1465, United Steelworkers of America, and Woodings-Verona Tool Works, Defendants.**

**Civ. A. No. 70–486.**

United States District Court,
W. D. Pennsylvania.

June 11, 1971.

---

Stone & Raynovich, Pittsburgh, Pa., for plaintiff.

Neely & Stockdale, A. E. Lawson, Asst. Gen. Counsel, United Steelworkers of America, Thomas H. M. Hough, Herman L. Foreman, William J. LeWinter, Pittsburgh, Pa., for defendants.

## OPINION
## ON MOTIONS FOR SUMMARY JUDGMENT

TEITELBAUM, District Judge.

This action, filed by Local 4076, United Steelworkers of America, under Section 301 of the Labor Management Relations Act of 1947, as amended (29 U.S.C. § 185, as amended),[1] alleges a breach of both a collective bargaining agreement and an arbitration award, by the defendants United Steelworkers of America, AFL–CIO ("United Steelworkers"); Local 1465, United Steelworkers of America; and Woodings-Verona Tool Works.

The following factual setting is substantially uncontested. Prior to November 20, 1967, the United Steelworkers was the certified bargaining representative of the production employees of both Woodings-Verona and The Klein Logan Company. During that time, Locals 4076 and 1465 were created and chartered by the United Steelworkers to represent, locally, the employees of Klein Logan and Woodings-Verona, respectively. On November 20, 1967, Klein Logan was purchased by Woodings-Verona. This purchase resulted in the total merger of Klein Logan into Woodings-Verona and the total dissolution of Klein Logan as a legal entity. In the ensuing assimilation of the former Klein Logan employees into the Woodings-Verona plant, the matter of the meshing of seniority rights came under dispute and was submitted to arbitration before Myron L. Joseph. On June 19, 1968, he decided that if and when former Klein Lo-

1. Section 301(a) thereof provides that, "Suits for violation of contracts between an employer and a labor organization * * * or between any * * * labor organizations, may be brought in any district court of the United States.* *"

gan employees were transferred into the Woodings-Verona plant, they would be entitled to transplant their seniority. The parties to this arbitration were Woodings-Verona and the United Steelworkers.

After the merger, the contracts between Woodings-Verona and the United Steelworkers, on the one hand, and Klein Logan and the United Steelworkers, on the other hand, expired at which time Woodings-Verona and the United Steelworkers renewed the contract covering Woodings-Verona's employees. The contract between Klein Logan and the United Steelworkers, however, was not renewed, and on February 25, 1969, the United Steelworkers cancelled and withdrew the charter of its former Local 4076.

The first cause of action of the complaint charges that the Klein Logan contract and the arbitration award have been breached in that the rights secured thereunder to the former employees of Klein Logan have not been respected. The second cause of action charges that the United Steelworkers is in breach of its duty to fairly represent the members of Local 4076 in that it has failed to prosecute, at least, its post arbitration award grievances.

The three defendants have moved for summary judgment. Woodings-Verona assigns as the bases for its motion the lack of legal standing of the plaintiff and the failure of the plaintiff to first follow the established grievance procedures. United Steelworkers and Local 1465 argue that the plaintiff is without either the legal capacity or standing to maintain this suit.

■ We think the motions are more properly to dismiss than for summary judgment. A summary judgment considers the merits of a claim while, on the other hand, a dismissal considers only matters in abatement, i. e., procedural matters which do not prejudice the

merits. Martucci v. Mayer, 210 F.2d 259 (C.A. 3, 1954). The incapacity of a party to maintain suit is a matter in abatement. 6 Moore's Fed.Prac. (Second Ed.) ¶56.03, p. 2052. Recently, in Fireman's Fund Insurance Company v. Myers, 439 F.2d 834 (C.A. 3, 1971), the Third Circuit suggested that labels applied to judicial demands should not control the treatment of the demands. In Navios Corporation v. National Maritime Union of America, 236 F.Supp. 657 (D.C.E.D.Pa., 1964) the Court held that

"* * * since the label attached to a motion is unimportant, a motion for summary judgment for lack of jurisdiction over the subject matter may be treated and disposed of as a motion to dismiss. * * *"

Accordingly, since the bases of the instant motions are matters in abatement and since we are not considering the merits of the claims, we treat the motions as to dismiss rather than for summary judgment.

Local 4076 purports to sue as a "labor organization" within the meaning of Section 2(5) of the Labor Management Relations Act (29 U.S.C. § 152(5), as amended). Defendants counter that Local 4076 is not a "labor organization" principally because the United Steelworkers was, and is, the sole and exclusive bargaining representative of the employees which are alleged to comprise Local 4076. They urge that as a local union, Local 4076 does not exist because its charter has been cancelled and withdrawn. We think that although Local 4076 may well be an independent "labor organization",[2] whether it is or is not is irrelevant.

■ We think that the relevant inquiry is whether or not, wholly apart from its former character and identity as a chartered local of the United Steelworkers, Local 4076 retains the characteristics and incidents of an unincorporated association. The concept "unin-

---

2. See International Association of Machinists, Lodge 1652 v. International Aircraft Services, Inc., 302 F.2d 808 (C.A.4, 1962), and Burlesque Artists Association v. I. Hirst Enterprises, Inc., 267 F.2d 414 (C.A.3, 1959).

corporated association" generally denotes a voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common enterprise or prosecuting a common objective. Yonce v. Miners Memorial Hospital Assn., Inc., 161 F.Supp. 178 (D.C.W.D.Va., 1958) and Rosen v. Alleghany Corporation, 133 F.Supp. 858 (D.C.S.D.N.Y., 1955). In California Clippers, Inc. v. United States Soccer Football Association, 314 F.Supp. 1057 (D.C.N.D.Calif., 1970) while the Court held an "International Games Committee" of the defendant which had no office, no mailing address, no assets or obligations and in fact had never met, not to be an unincorporated association, it restated and reaffirmed the general definition. While the record in the instant action is sparse regarding the activities of Local 4076, we note that its members continue to maintain and assert its existence generally, including the filing of this lawsuit, and find that, notwithstanding its adherence to what is now a misnomer, Local 4076 qualifies as an unincorporated association.

■ In this posture, its legal capacity to maintain suit is controlled by F.R. Civ.P. 17(b) which provides that in the case of an unincorporated association, capacity to sue shall be determined by state law except that even when state law denies capacity, an unincorporated association may sue for the purpose of enforcing for it a substantive right existing under the laws of the United States.[3] Rule 2152 of the Pennsylvania Rules of Civil Procedure, 12 P.S. Appendix requires an action prosecuted by an unincorporated association to be "in the name of a member or members thereof as trustees ad litem for such association". The nominal plaintiff in this case is simply Local 4076. Thus Rule 2152 denies capacity.

■ The exception of F.R.Civ.P. 17, however, permits an unincorporated association to maintain suit if the suit is for the purpose of enforcing for it a substantive right existing under the laws of the United States. This brings us to the question of whether Section 301(a) of the Labor Management Relations Act, under which this suit is brought, confers substantive rights as well as jurisdictional rights. This question was thoroughly considered in the landmark decision of Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957). That Court decided that Section 301(a) was more than jurisdictional, that it authorized federal courts to fashion a body of substantive federal law of enforcement and that that substantive federal law is to be fashioned from the policy of the national labor laws. This decision, most recently reaffirmed in Boys Markets, Inc. v. Retail Clerk's Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), has since controlled the question.

This, in turn, brings us to the phrase "enforcing for it", or standing, under Section 301(a). Literally, Section 301(a) allows that "[s]uits for violation of contracts * * * may be brought. * * *" The designations of employers and labor organizations are for the purpose of specifying what contracts are within its ambit, not for the purpose of directly delimiting those who may bring suit thereunder. This has been the judicial construction of this section. In Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), the Supreme Court decided that an employee had standing under Section 301(a) to sue his employer to vindicate rights arising from his employers' alleged breach of the collective bargaining agreement between his union and his employer and in Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d

3. Rule 17(b) Capacity to Sue or be Sued. "In all other cases [other than individual or corporate] capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except that * * * [an] unincorporated association, which has no ca-

pacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the * * * laws of the United States. * * *"

370 (1964),[4] that Court further decided that an employee had standing under Section 301(a) to sue his union to vindicate rights arising from his union's alleged breach of its duty to fairly represent him pursuant to his union's collective bargaining agreement with his employer. The Third Circuit, in Falsetti v. Local Union No. 2026, United Mine Workers, 355 F.2d 658 (C.A. 3, 1966), while regarding the problem of who has standing to sue under Section 301 as "an unsettled one", agreed with the District Court[5] that an employee has standing to sue, on a collective bargaining agreement between his employer and his union, both the employer and the union. Failing to note a distinction between a single plaintiff and a plural plaintiff,[6] we conclude that the standing of Local 4076, as an unincorporated association of employees is clear, and that the capacity to sue under F.R.Civ.P. 17(b) is then complete.

■ Defendants assert, in the alternative, that this plaintiff is barred from maintaining this suit because of a failure to exhaust established grievance procedures. The plaintiff's allegations, however, which must be accepted at this stage in the proceedings, are that attempts to pursue the established grievance procedures have been ignored or thwarted by the defendants. The views of the Supreme Court in Vaca v. Sipes, 386 U.S. 171, 184–187, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), we think, are dispositive of defendants' assertions. That Court reasoned as follows:

"* * * [i]t is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement. * * * However, because these contractual remedies have been devised and are often controlled by the union and the employer, they may well prove unsatisfactory or unworkable for the individual grievant. The problem then is to determine under what circumstances the individual employee may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures."

"An obvious situation in which the employee should not be limited to the exclusive remedial procedures established by the contract occurs when the conduct of the employer amounts to a repudiation of those contractual procedures. * * * In such a situation (and there may of course be others), the employer is estopped by his own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action."

\* \* \* \* \* \*

"For these reasons, we think [a wronged employee] may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance. * * * And if, to facilitate his case, the employee joins the union as a defendant, the situation is not substantially changed."

This analysis would seem to have particular application in an instance when the allegation is that an arbitration award has been disregarded.

Accordingly, the defendants' respective motions, treated as to Dismiss rather than for Summary Judgment are denied, and an appropriate Order will be entered.

---

4. With the exception of the designation of the plaintiff, the factual setting in that case is remarkably similar to that in the instant action.

5. Falsetti v. Local Union No. 2026, United Mine Workers, 34 F.R.D. 461 (D.C.W.D. Pa., 1964).

6. See Mandel v. Highway and Local Motor Freight Drivers, 246 F.Supp. 805 (D.C. S.D.N.Y., 1964).