557 F.2d 1345
 96 L.R.R.M. (BNA) 2096, 82 Lab.Cas. P 10,061
 INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL UNION
NO. 117, Plaintiff-Appellant,
v.
WASHINGTON EMPLOYERS, INC., Booth Fisheries, Main Fish
Company, Inc., McCallum Legaz Fish Company, Inc., New
England Fish Company, Perfection Smokery, Inc., Whitney
Fidalgo Seafoods, Inc., Seattle Seafoods, Inc., Washington
Fish & Oyster Company, Inc., Diamond Ice & Storage Co.,
Nordic Cold Storage Co., Inc., Olympic Cold Storage and
Warehouse Co., Rainier Ice & Cold Storage Co., Rainier Port
Cold Storage, Inc., and SDC Cold Storage, Defendants-Appellees.
 No. 75-3343.
 United States Court of Appeals,
Ninth Circuit.
 July 25, 1977.
 
 William A. Roberts, argued, Vance, Davies & Roberts, Seattle, Wash., for plaintiff-appellant.
 Peter M. Anderson, Seattle, argued for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before LUMBARD,* WRIGHT and ANDERSON, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 Plaintiff, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 117 (the "Union"), appeals from a judgment of the Western District of Washington, McGovern, Judge, entered on October 8, 1975, refusing to enforce and setting aside an arbitrator's award. Defendant, Washington Employers, Inc., is an employers association acting on behalf of certain wholesale fish firms, also defendants herein (collectively referred to as the "Employers").
 
 
 2
 On January 9, 1974, pursuant to an agreement to arbitrate, arbitrator Norman A. Stoll found, on the basis of a written record, that the Employers had violated RCW 49.52.050 by willfully withholding wages due to their employees and awarded the employees double damages, pursuant to RCW 49.52.070. Appellants brought this suit to enforce the award, pursuant to section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. The district court granted the Employers' motion for summary judgment and dismissed the complaint on the grounds that the Washington statutes applied by the arbitrator were in conflict with federal labor policy and were preempted. We hold that under the circumstances the Employers were precluded from attacking the arbitrator's jurisdiction on the ground that the state statutes he was asked to apply were in conflict with federal law. Accordingly, the judgment of the district court is reversed and the case is remanded with instructions to enter judgment enforcing the award.
 
 
 3
 The present controversy grew out of a dispute over the propriety of wage increases called for by a collective bargaining agreement between the parties. On November 8, 1971 the Employers and the Union entered into a collective bargaining agreement, which provided for three separate wage increases to be effected on November 13, 1971, April 1, 1972, and April 1, 1973. At the time the agreement was entered into the federal wage stabilization program was in effect. See Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note. On November 14, 1971 the federal Pay Board put into effect certain regulations which set a ceiling of 5.5 percent on wage increases in new labor agreements. See 36 Fed.Reg. 21790 (November 13, 1971). By letter dated December 17, 1971 the Employers advised the Union that they would seek a "clarification" of the legitimacy of implementing the wage increases called for by the November 8 agreement, which were in excess of Pay Board guidelines, and that upon receipt of such clarification the wage increases called for by the contract would be paid retroactively. On December 20, 1971 the Employers filed a challenge with the Pay Board alleging that the contractually agreed upon wage increases were "unreasonably inconsistent" with Pay Board guidelines. However, it was not until October 2, 1972 that the Pay Board issued a decision approving the increases.
 
 
 4
 The Union does not appear immediately to have objected to the Employers' withholding of the wage increases. However, by letter dated April 10, 1972 the Union demanded to know whether the Employers intended immediately to implement the wage increases called for by the contract as of November 13, 1971 and April 1, 1972. On April 17, 1972 the Employers responded by letter stating that although two 5.5 percent increases would be put into effect as of November 14, 1971 and April 1, 1972, further increases would have to await the Pay Board's determination. The Union responded on April 21, 1972, stating that the Employers were obligated to pay the contractually agreed upon increases and demanding that the issue be settled through the grievance and arbitration procedures provided for by the collective bargaining agreement.[1] In addition, the Union claimed that the Employers were obligated to pay double damages to each employee affected by the withholding of the wage increases, in accordance with Washington statutes. RCW 49.52.050[2] and 49.52.070[3] provide that where an employer has willfully paid an employee a lower wage than is provided for by contract, the employer is guilty of a misdemeanor and is subject to a civil action by the employee for judgment in an amount twice the sum of the wages withheld. The Union continued to press for arbitration and reiterated its demand for double damages under Washington law. By letter dated August 11, 1972 the Employers stated, "We continue to believe that the instant question is not an appropriate subject for arbitration under the Agreement, . . . However, . . . we would be willing to present the sole question of whether this matter is an appropriate subject for arbitration to an arbitrator."
 
 
 5
 On September 7, 1972 the Union filed suit in district court seeking to compel arbitration of the dispute under the collective bargaining agreement. On October 2, 1972 the Pay Board approved the wage increases and shortly thereafter the employers paid the full amount of the wage increases, retroactive to November 13, 1971. Thus, the only unresolved matter was the Union's claim that the employees were entitled to double damages under Washington law.
 
 
 6
 In a letter dated March 15, 1973 counsel for the Employers advised the Union that, "As discussed, we agree to arbitrate . . . and do, of course, agree to be bound by any decision rendered. . . . Trust this is satisfactory and you will now proceed to finalize and enter the order of dismissal in District Court case filed in this matter." Pursuant to this agreement, the Union's suit was dismissed without prejudice and the parties executed a stipulation to arbitrate, which provided as follows: "The sole issue before the Arbitrator is whether the Employers' failure to pay the full amount of the specified wage increases until they received a decision of the Pay Board was a violation of RCW 49.52.050 entitling the employees to double damages as provided in RCW 49.52.070." The stipulation also stated that it was the Employers' position that they were not required to pay the wage increases until such payment was authorized by the Pay Board and that the employees had received all the compensation to which they were entitled.
 
 
 7
 The issue was presented to the arbitrator on a written record. In their brief to the arbitrator the Employers argued that they had acted in good faith in withholding the wage increases pending a determination of their legality. The Employers also argued that double damages were a drastic remedy and that an award of such punitive damages under the circumstances would be in conflict with the remedial purposes of section 301 of the LMRA. The Employers conceded, however, that punitive damages could be awarded "in those cases where the conduct can be characterized as 'willful' or 'outrageous.' "[4]
 
 
 8
 In his decision of January 9, 1974 arbitrator Stoll found that by April 21, 1972, the day the Union first made a formal demand for immediate compliance with the November 8 agreement, "it was abundantly clear that the (Pay Board) regulations permitted payment 'unless and until' the Pay Board acted favorably upon the (Employers') challenge." Accordingly, Mr. Stoll found that as of April 22, 1972 the Employers had willfully withheld wages due to the employees and consequently from that date forward the employees were entitled to double damages in accordance with the applicable Washington statutes. Turning to the Employers' argument that punitive damages were not an appropriate remedy, Mr. Stoll indicated that he was bound by the stipulation requiring a determination of whether the Washington statutes had been violated and held that under the circumstances the relevant statutes made the award of double damages mandatory; however, Mr. Stoll also found that an award of punitive damages in this case was " 'within the remedial purpose of the labor laws,' " quoting Sidney Wanzer & Sons, Inc. v. Milk Drivers Union, Local 753, 249 F.Supp. 664, 671 (N.D.Ill.1966).
 
 
 9
 The Employers subsequently moved for reconsideration and for the first time argued that the arbitrator had exceeded his jurisdiction by basing his award on a state statute that was in conflict with and was preempted by federal law. The Union responded that the arbitrator had no authority to reconsider his decision.
 
 
 10
 After corresponding with the parties, Mr. Stoll denied the motion for reconsideration on April 19, 1974. He concluded that his opinion had applied the Washington law and had dealt completely with the issues as defined in the stipulation and that there was no basis upon which to reopen the decision. His ruling concluded by stating:
 
 
 11
 The present problem could easily have been avoided by the Employers' insisting upon a somewhat different statement of the issue or by the Employers' noting an appropriate reservation in the Stipulation. In that event the original written arguments undoubtedly would have included a more complete briefing on the jurisdictional issues now raised for the first time. In the circumstances I think it simple justice that the Union at this point should be allowed to go into court on the basis of the Award as originally entered.
 
 
 12
 After the Employers refused to comply with the award, the Union filed this suit on April 25, 1974, seeking enforcement of the award pursuant to section 301 of the LMRA. The Employers filed a counterclaim seeking to have the award set aside and the matter was submitted on cross motions for summary judgment. The district court held for the Employers on two grounds: (1) that RCW 49.52.070 is preempted insofar as it applies to collective bargaining agreements governed by federal law; and, (2) that the award "cannot be enforced as federal labor policy under 29 U.S.C. § 185 precludes the award of such punitive damages."
 
 
 13
 The Employers make a two-pronged attack on the Washington statutes: first, they argue that application of the RCW 49.52.070 provision for punitive damages is in conflict with the remedial purposes of federal labor policy; and, second, that, regardless of the character of the damages, the body of federal substantive law governing collective bargaining agreements must be uniform and that section 301 of the LMRA excludes all state legislation in the same field. See, e.g., Jones v. Rath Packing Co., 430 U.S. 519, 524-26, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); Local 20, Teamsters Union v. Morton, 377 U.S. 252, 258, 260-61, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964). Further, the Employers contend that the preemption issue was never really presented to or decided by the arbitrator and that they were free to raise it in the district court.
 
 
 14
 We conclude that having agreed to submit the issue of their liability under RCW 49.52.050 and 49.52.070 to binding arbitration, the Employers may not now be heard to challenge the applicability of those statutes. Consequently, we need not deal with the extent to which punitive damages may be allowed in conflicts falling within section 301 of the LMRA.[5]
 
 
 15
 In essence, the Employers' argument is that the arbitrator exceeded his jurisdiction by basing his award on state statutes that are in conflict with and are preempted by federal law. It is well-established that arbitration is a matter of contract and a party is bound by an award only if he agreed to submit the issue to arbitration. See Ficek v. So. Pacific Co., 338 F.2d 655, 656 (9th Cir. 1964), cert. denied, 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280 (1965). Although the arbitrability of a dispute is ordinarily a question of contract interpretation for the courts, even this issue may be submitted to binding arbitration if there has been "a clear demonstration of that purpose." Steelworkers v. Warrior & Gulf Co., 363 U.S. 574, 583 n.7, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). See Metal Product Workers Union, Local 1645 v. Torrington Co., 358 F.2d 103, 105 (2d Cir. 1966).
 
 
 16
 At the outset it is arguable that the Employers' brief to the arbitrator demonstrates their intention to submit the preemption issue to the arbitrator and that Mr. Stoll's decision (the merits of which are not challenged by the Employers) should be interpreted as determining that issue adversely to the Employers. See United Steelworkers v. Northwest Steel Rolling Mills, Inc., 324 F.2d 479, 482 (9th Cir. 1963); Foster-Forbes Glass Co. v. Glass Bottle Blow. Ass'n of U.S. & C., 263 F.Supp. 729, 732-33 (N.D.Ind.1967).
 
 
 17
 However, assuming, as the Employers contend, that the preemption issue was never squarely presented to the arbitrator, it is simply too late in the day for the Employers to raise this argument. The record demonstrates that the Union began pressing its demands for double damages in April 1972. The Employers initially refused to arbitrate the issue, although they offered to submit the issue of arbitrability to arbitration. The Union then brought suit in district court to compel arbitration. If the Employers had any objections to the applicability of RCW 49.52.050 and 49.52.070 they could and should have been raised at this time. Instead, the Employers agreed to arbitrate the dispute and stipulated that the "sole issue" was whether the Employers' withholding of the wage increases had violated the relevant statutes. The stipulation, which stated the positions of the parties, indicated that the essential question for decision was whether the Employers had acted "willfully" within the meaning of RCW 49.52.050. It was only after the arbitrator had decided this issue adversely to the Employers that they sought to raise for the first time the claim that the arbitrator had exceeded his jurisdiction by basing his decision on preempted state laws.
 
 
 18
 In short, we find from the conduct of the parties and their stipulation that the Employers waived any objections to the arbitrator's jurisdiction when they agreed to submit the issue of their liability under RCW 49.52.070 to arbitration. See Ficek v. So. Pacific Co., supra, 338 F.2d at 657. We cannot believe that the Union would have agreed to the dismissal of its section 301 suit had it considered it possible that the Employers could later resist the arbitrator's award on the grounds that he was foreclosed from applying the very statutes that the parties had stipulated he should apply. See United Steelworkers v. Northwest Steel Rolling Mills, Inc., supra, 324 F.2d at 482. As arbitrator Stoll noted, any such objections by the Employers should have been preserved by an appropriate reservation in the stipulation.
 
 
 19
 We consider frivolous the Employers' argument that the arbitrator exceeded his jurisdiction by looking beyond the scope of the collective bargaining agreement. The parties specifically requested him to apply state law and by stipulating to such arbitration in exchange for dismissal of the section 301 suit, the parties "evinc(ed) a subsequent agreement for private settlement which would cure any defect in the arbitration clause." Amicizia Societa Nav. v. Chilean Nitrate & Iodine S. Corp., 274 F.2d 805, 809 (2d Cir.), cert. denied, 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960). See Ficek v. So. Pacific Co., supra, 338 F.2d at 656-57.
 
 
 20
 Finally, the Employers argue that the award should not be enforced because it is inconsistent with federal labor policy and is, therefore, contrary to public policy. " '(W)hen public policy is sought to be interposed as a bar to enforcement of (or as a reason to vacate) an arbitration award, a court must evaluate its asserted content." Metal Product Workers Union, Local 1645 v. Torrington Co., supra, 358 F.2d at 106, quoting Local 453, International Union of Elec. Radio & Mach. Workers v. Otis Elevator Co., 314 F.2d 25, 29 (2d Cir.), cert. denied, 373 U.S. 949, 83 S.Ct. 1680, 10 L.Ed.2d 705 (1963). We do not agree.
 
 
 21
 Although it is arguable that the application of state statutes such as those at issue would frustrate the federal interest in a uniform federal law of collective bargaining agreements, see, e.g., Teamsters, Local 174 v. Lucas Flour Co., 369 U.S. 95, 103, 82 S.Ct. 571, 7 L.Ed.2d 593 (1961), the effect of enforcing this award is de minimis ; the award bind only the parties to this arbitration and governs only one transaction which is now remote in time. Should a similar situation arise again, the Employers will be free to raise any such objections. Similarly, although we recognize that the federal labor laws are generally remedial in character and that in some circumstances an award of punitive damages might serve as an irritant in continuing labor relations, we do not think that the cause of industrial good will would be greatly aided by striking down this award. Finally, we think that the strong federal policy in favor of the peaceful and speedy resolution of industrial disputes through binding arbitration far outweighs any possible adverse impact. See, e.g., Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 455, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); Steelworkers v. Warrior & Gulf Co., supra, 363 U.S. at 578, 80 S.Ct. 1347.
 
 
 22
 Accordingly, the judgment of the district court is reversed and the case is remanded with instructions to enter judgment enforcing the arbitrator's award.
 
 
 
 *
 Senior Circuit Judge for the Second Circuit
 
 
 [1]
 Article XXVI of the collective bargaining agreement provides, inter alia, that, "Should any dispute or grievance arise between the Union and an Employer, such matter shall be submitted to the Union and the Employer . . . ." The agreement goes on to provide a series of steps, culminating in "final and binding" arbitration, for the processing of disputes not settled by the Union and Employers
 
 
 [2]
 RCW 49.52.050 provides, in relevant part, as follows:
 Any employer of officer, vice principal or agent of any employer, whether said employer be in private business or an elected public official, who
 (2) Wilfully and with intent to deprive the employee of any part of his wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract;
 Shall be guilty of a misdemeanor.
 
 
 [3]
 RCW 49.52.070 provides as follows:
 Civil liability for double damages. Any employer and any officer, vice principal or agent of any employer who shall violate any of the provisions of subdivisions (1) and (2) of RCW 49.52.050 shall be liable in a civil action by the aggrieved employee or his assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees: Provided, however, That the benefits of this section shall not be available to any employee who has knowingly submitted to such violations.
 
 
 [4]
 See Company Post-Hearing Brief, Record at 90-91
 
 
 [5]
 The courts have divided on the issue of whether and when such damages may be awarded. See, e.g., Hotel and Restaurant Employees and Bartenders Int. Union v. Michelson's Food Services, Inc., 545 F.2d 1248, 1254 (9th Cir. 1976); Holodnak v. Avco Corp., Avco-Lycoming Div., Stratford, Conn., 514 F.2d 285 (2d Cir.), cert. denied, 423 U.S. 892, 96 S.Ct. 188, 46 L.Ed.2d 123 (1975); Butler v. Yellow Freight System, Inc., 514 F.2d 442, 454 (8th Cir.), cert. denied, 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975); Williams v. Pacific Maritime Ass'n, 421 F.2d 1287 (9th Cir. 1970); Local 127, United Shoe Workers of America v. Brooks Shoe Manufacturing Co., 298 F.2d 277 (3rd Cir. 1962) (en banc); Zamora v. Massey-Ferguson, Inc., 336 F.Supp. 588 (S.D.Iowa 1972); Sidney Wanzer & Sons, Inc. v. Milk Drivers Union, Local 753, supra