**BROADWAY CAB COOPERATIVE, INC., Plaintiff-Appellant,**

v.

**TEAMSTERS & CHAUFFEURS LOCAL UNION NO. 281, IBT, Defendant-Appellee.**

No. 82-3176.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 5, 1983.

Decided July 15, 1983.

James B. Ruyle, I. Franklin Hunsaker, Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland, Or., for plaintiff-appellant.

Stephen H. Buckley, Carney, Probst, Cornelius & Buckley, Portland, Or., for defendant-appellee.

Before WALLACE and SCHROEDER, Circuit Judges, and COYLE,* District Judge.

* Honorable Robert E. Coyle, United States District Judge, Eastern District of California, sit-ting by designation.

WALLACE, Circuit Judge:

Broadway Cab Cooperative, Inc. (Broadway) appeals from the district court's enforcement of an arbitration award for $18,195 in favor of Teamsters and Chauffeurs Local Union No. 281 (the union). Broadway contends that the arbitrator's award was contrary to law and public policy, and, therefore, the district court erred in refusing to review the arbitrator's decision to apply estoppel rather than common-law agency principles in determining the existence of an employer-employee relationship. We agree and reverse.

I

The facts are undisputed. Broadway is a cooperative corporation owned exclusively by taxicab owners, referred to in the labor contract as "owner-drivers." Broadway and the union were parties to a series of multiemployer collective bargaining agreements. The contract in dispute was in effect from February 1, 1979 through February 1, 1982.

For several years prior to 1969, Broadway and the union negotiated labor agreements covering hired drivers and dispatchers, but not owner-drivers. In 1969, the owner-drivers were added to the contract concurrent with their initial inclusion in the Teamsters pension plan. This contract, like the contract in dispute, required owner-drivers to pay union dues or be "removed from the job." Pursuant to the contracts, the owner-drivers paid membership dues to the union for several years, although no dues checkoff authorizations were executed.

At the commencement of the 1979 negotiations, the Teamsters Trust Fund Council recommended that the owner-drivers be excluded from participation in the pension plan, and they were eliminated from pension coverage under the disputed contract. Nevertheless, the dues payment provisions remained.

Following the 1979 negotiations, owner-drivers in increasing numbers ceased to pay their required periodic dues. After informal attempts to collect the dues failed, the union instructed the owner-drivers to pay their past dues and warned that if they did not, they would be discharged. Failing in these efforts, the union notified the company requesting that "pursuant to the current Labor Agreement [the delinquent employees] be discharged without delay." The company failed to discharge the delinquent owner-drivers or to insist that they pay the required monthly dues on time. On June 10, 1980, the union filed a grievance.

The parties agreed to submit the case to binding arbitration. The arbitration submission agreement required the arbitrator to decide three issues:

1. Was the Collective Bargaining Agreement violated when certain "owner-drivers" were not discharged as requested by the union?

2. If so, is Art. 2.3 of the Collective Bargaining Agreement [which requires removal of employees not in good standing with the union] unenforceable within the meaning of Section 8(e) of the National Labor Relations Act as to "owner-drivers"?

3. If Art. 2.3 is enforceable as to "owner-drivers," what is the appropriate remedy?

As is apparent from the framing of these issues, Broadway's principal defense was that the requirement that the owner-drivers be union members violated section 8(e) of the National Labor Relations Act, the "hot-cargo" provision.[1] 29 U.S.C. § 158(e). Indeed, as the arbitrator recognized, Broadway conceded the first issue and relied on its section 8(e) defense.

The resolution of the section 8(e) issue depended on the arbitrator's determination of whether the owner-drivers should be characterized as "employees" or "independent contractors." If the latter, the union concedes that the contract violates section 8(e).

The independent contractor/employee question ordinarily is resolved by applying "common law agency principles to the total factual context of each case." *Sida of Hawaii, Inc. v. NLRB,* 512 F.2d 354, 357 (9th Cir.1975); *accord NLRB v. United Insurance Co. of America,* 390 U.S. 254, 256, 258, 88 S.Ct. 988, 989, 990, 19 L.Ed.2d 1083 (1968); *General Teamsters, Auto Truck Drivers & Helpers Local 162 v. Mitchell Brothers Truck Lines,* 682 F.2d 763, 766 (9th Cir.1982) (*Mitchell Brothers*). Accordingly, Broadway argued that the contractual provisions in question violated section 8(e) because under this common-law agency analysis, the owner-drivers were independent contractors, not employees. The union countered with two arguments: (1) the owner-drivers were employees, not independent contractors, and (2) Broadway was estopped from arguing that the owner-drivers were independent contractors because the language of the contract itself refers to the owner-drivers as employees.

The arbitrator accepted the union's second argument and held that Broadway was estopped from asserting that the owner-drivers were independent contractors. He based his decision on the express language of the contract and also on the parties' history of referring to and treating the owner-drivers as employees. Because the independent contractor issue was the basis of Broadway's section 8(e) defense and Broadway was estopped from raising it, the union prevailed. The arbitrator ordered Broadway to pay the union $18,195 in compensation for lost union dues, initiation fees

---

1. Section 8(e) states in part:

   It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void ....
   29 U.S.C. § 158(e).

and reinstatement fees resulting from Broadway's breach of the collective bargaining agreement.

Broadway then brought suit in the district court under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), to vacate the award of the arbitrator. The district judge employed the very limited standard of review of an arbitrator's award set forth in the *Steelworkers Trilogy* and stated that "[t]o hold otherwise would undermine the arbitration system, by allowing *de novo* litigation here of the identical issues decided by the arbitrator, whenever the losing party before the arbitrator made an unfair labor practice charge under 8(e)." As a result, the district judge refused to hear Broadway's section 8(e) argument on the merits and granted the union's motion for summary judgment.

## II

Broadway contends that the arbitrator erred in applying estoppel and not reaching the merits of the section 8(e) issue. The district court, Broadway argues, should have reviewed the arbitrator's decision de novo and decided the section 8(e) question. The union responds that the district court was correct in granting the usual deference to an arbitrator's decision. Thus, the central issue in this case is what standard of review the district court should have employed. We agree with Broadway. The district court erred in not reviewing the estoppel issue de novo. This area of de novo review, however, is very limited.

■ Under the *Steelworkers Trilogy*, a district court ordinarily engages in only a very limited review of an arbitrator's decision. *See United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). An award will

be upheld provided it "draws its essence from the collective bargaining agreement," *id.* at 597, 80 S.Ct. at 1361; that is, as long as the arbitrator looks to the words of the contract and to the conduct of the parties, i.e., "the common-law of the shop." *Riverboat Casino, Inc. v. Local Joint Executive Board of Las Vegas*, 578 F.2d 250, 251 (9th Cir.1978). We defer not only to an arbitrator's factual determinations, but ordinarily to his legal conclusions as well. *American Postal Workers Union AFL–CIO v. United States Postal Service*, 682 F.2d 1280, 1284 (9th Cir.1982) (courts must defer to arbitrator's legal conclusions unless the arbitrator has manifestly disregarded the law), *cert. denied*, —— U.S. ——, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983) (*Postal Workers*); *Coast Trading Co. v. Pacific Molasses Co.*, 681 F.2d 1195, 1198 (9th Cir.1982) (arbitrator's award "will not be set aside by a court for error either in law or fact") (non-labor arbitration case); *International Brotherhood of Teamsters, Local Union No. 117 v. Washington Employers, Inc.*, 557 F.2d 1345, 1349–50 (9th Cir.1977) (*Washington Employers*). When, as in the case before us, the parties agree to submit a legal question to arbitration, we review the arbitrator's resolution of that question under the *Steelworkers Trilogy* standard even if the question is one that ordinarily is for the courts to decide. *Id.*

■ Nevertheless, there are limited exceptions to the deferential *Steelworkers Trilogy* standard of review. *See* R. Gorman, *Basic Text on Labor Law* 586–603 (1976). An arbitrator's decision does not warrant deference if it would violate either law or public policy. *See Washington Employers*, 557 F.2d at 1350 (when public policy is invoked as a bar to enforcement of or as a reason to vacate an arbitration award, courts must evaluate its asserted content); *accord Postal Workers*, 682 F.2d at 1285–86; *Mitchell Brothers*, 682 F.2d at 766; *Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co.*, 442 F.2d 1234, 1239 (D.C.Cir.1971); R. Gorman, *supra*, at

593–98. Broadway argues that no deference is owed to the arbitrator in this case because the contract violates section 8(e) and enforcement of it would therefore violate law and public policy.

Deciding whether the against law and public policy exception applies requires us to balance countervailing policy considerations. On the one hand, we are not free to overturn an arbitrator's decision simply because we would have decided the legal question differently. Otherwise, whenever an arbitrator decided an unfair labor practice charge under section 8(e), or any other legal issue, the losing party could obtain de novo review and, in essence, try his case twice. Such failure to defer would contravene the "strong federal policy in favor of the peaceful and speedy resolution of industrial disputes through binding arbitration ...." *Washington Employers,* 557 F.2d at 1351; *see also United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. at 578, 80 S.Ct. at 1350; *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 455, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957).

On the other hand, the arbitrator "does not sit to dispense his own brand of industrial justice. . . . [H]is award is legitimate only so long as it draws its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361.

In this case we are asked to review the legal standard which the arbitrator used to determine employee status. Such review is consistent with our disposition in a recent case with facts similar to those of the case before us. *Mitchell Brothers.* There, Mitchell Brothers, a trucking company, employed two different types of employees, ones that drove equipment owned by Mitchell Brothers, and others that operated their own trucking equipment. All employees were required to maintain membership in the union. When a major portion of the stock in Mitchell Brothers changed hands, the new major stockholder announced that owner-operators would no longer be required to maintain union membership and that Mitchell Brothers would no longer withhold contributions for health and welfare and for pension benefits from the owner-operators. The union filed a grievance, and it was submitted to arbitration. The arbitrator ruled in favor of the union, finding that the owner-operators were employees and not independent contractors. 682 F.2d at 764–65. The district court enforced the arbitrator's decision.

Our case is different, however, because the arbitrator in this dispute never reached the employee/independent contractor issue. In *Mitchell Brothers* we held that this issue was properly reviewed under the traditional deferential standard. Nevertheless, we independently reviewed the legal standard applied by the arbitrator in deciding the independent contractor question. The employer argued that the arbitrator had employed an outdated legal standard, rather than the common-law agency standard required under Supreme Court precedent. *See NLRB v. United Insurance Co. of America,* 390 U.S. at 256, 258, 88 S.Ct. at 989, 990. We rejected this argument because we decided that the arbitrator's analysis was consistent with the common-law agency test. We concluded that "[t]he Arbitrator did, *in fact,* use the 'common-law agency test' in arriving at his decision." 682 F.2d at 766 (emphasis in original). Thus, in *Mitchell Brothers* we deferred to the arbitrator's resolution of the employee/independent contractor issue, a legal decision based on factual determinations, but engaged in an independent review of whether the legal standard applied by the arbitrator was contrary to Supreme Court precedent.

### III

Given these general principles, the resolution of this case is relatively easy. Broadway argues that a party may not be estopped from asserting a section 8(e) defense and that the arbitrator's decision violates Supreme Court precedent. This argument

may be recharacterized as follows: in employing principles of estoppel, rather than the common-law agency test, to decide the section 8(e) issue, *see NLRB v. United Insurance Co. of America,* 390 U.S. at 256–58, 88 S.Ct. at 989–90, the arbitrator applied a legal standard that is contrary to law and public policy and, thus, deference to his decision is unwarranted.[2] The union, on the contrary, contends that the common-law agency test is not the exclusive method for deciding the independent contractor issue. It argues that section 8(e) issues may be decided on the basis of estoppel as well. We disagree.

■ Although arbitrators have at times decided issues on the basis of estoppel,[3] the Supreme Court has foreclosed the use of estoppel principles to defeat a section 8(e) defense. In *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982) (*Kaiser*), the Court held that the district court must consider an employer's section 8(e) defense to a section 301 suit to enforce a collective bargaining agreement. The Court stated in a footnote: "And if it be suggested that Kaiser should not have waited so long to assert its defense, the Court has held that '*rules of estoppel will*

not be permitted to thwart the purposes of statutes of the United States.'" *Id.* at 81 n. 6, 102 S.Ct. at 858 n. 6 *quoting Sola Electric Co. v. Jefferson Electric Co.,* 317 U.S. 173, 176, 63 S.Ct. 172, 174, 87 L.Ed. 165 (1942) (emphasis added). Thus, by refusing to hear Broadway's section 8(e) argument on the merits, the arbitrator contradicted the explicit mandate of the Supreme Court and applied an incorrect legal standard.

The union argues that *Kaiser* is inapplicable because it did not involve an arbitration award. We disagree. Policy considerations implicit in the Supreme Court's decision to forbid estoppel arguments in opposition to a section 8(e) defense are implicated in arbitration decisions as well. Hot cargo provisions are, by definition, contractual provisions to which both parties have consented. Such clauses invariably refer to workers as employees rather than independent contractors. As a result, the union can always argue that the employer already has agreed that such workers are employees and should be estopped from attempting to prove otherwise. Thus, enforcement of the arbitrator's decision in this case would essentially eliminate section 8(e) defenses in arbitration proceedings.

---

**2.** Broadway also argues that no deference is owed the arbitrator's award because, unlike the arbitrator in *General Teamsters, Auto Truck Drivers & Helpers Local 162 v. Mitchell Brothers Truck Lines,* 682 F.2d 763 (9th Cir.1982), the arbitrator in this case did not decide the section 8(e) issue. *See Botany Industries, Inc. v. New York Joint Board, Amalgamated Clothing Workers of America,* 375 F.Supp. 485 (S.D.N.Y.) (when arbitrator refuses to consider a section 8(e) defense, the district court must consider it de novo), *vacated as moot sub nom. Robb v. New York Joint Board, Amalgamated Clothing Workers of America,* 506 F.2d 1246 (2d Cir.1974) (per curiam); *cf. Jackson Purchase Rural Electric Cooperative Association v. Local Union 816, International Brotherhood of Electrical Workers,* 646 F.2d 264 (6th Cir.1981) (arbitrator cannot decide that an arbitration award violated labor statute and then enforce the award nonetheless). The union responds that the arbitrator did decide the issue, albeit on the basis of estoppel principles. Thus, the question becomes whether, by resolving the section 8(e) defense on the basis of estoppel, the arbitrator can be said to have "decided" the

section 8(e) question. We need not resolve this issue because we conclude that the arbitrator applied an incorrect legal standard in basing his decision on principles of estoppel.

**3.** *See* F. Elkouri & E. Elkouri, *How Arbitration Works* 349–51 (3d ed. 1973). In deciding this case we do not imply that arbitrators may never base arbitration awards on estoppel principles. Indeed, such procedural questions, even though legal in nature, are within the purview of the arbitrator's authority if he decides them on the basis of the contract and common law of the shop. *See Riverboat Casino, Inc. v. Local Joint Executive Board of Las Vegas,* 578 F.2d 250 (9th Cir.1978) (upholding arbitrator's decision not to give precedential value to an earlier arbitration decision); *Holly Sugar Corp. v. Distillery, Rectifying, Wine & Allied Workers International Union,* 412 F.2d 899, 903–04 (9th Cir.1969) (upholding arbitrator's interpretation of a contractual statute of limitations for filing grievances). We only decide that an arbitrator may not decide section 8(e) issues on the basis of estoppel.

Nor is there any reason to fear that our refusal to defer will undermine the arbitration process. As long as the arbitrator engages in the proper examination of the independent contractor/employee question under common-law agency principles, rather than refusing to make such an analysis, his decision will be subject to only the limited *Steelworkers Trilogy* review. A contrary holding might discourage arbitration because employers would be less likely to submit issues to an arbitrator if they knew that he could disregard the merits of a legal argument that a district court would be forced to consider.

In conclusion, because the arbitrator contradicted Supreme Court precedent and applied an incorrect legal standard, his award is contrary to law and public policy. The case is reversed and remanded for consideration of Broadway's section 8(e) defense on the merits.

REVERSED AND REMANDED.