**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

SOUTHERN CALIFORNIA DARTS
ASSOCIATION, a California
unincorporated association,
*Plaintiff-Appellee*,

v.

DINO M. ZAFFINA, pro se, an
individual,
*Defendant-Appellant*,

and

SOUTHERN CALIFORNIA DARTS
ASSOCIATION, INC., a California
corporation,
*Defendant*.

No. 13-55780

D.C. No.
2:12-cv-01899-R
GK-JCG

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Submitted December 20, 2013[*]

Filed August 11, 2014

---

[*] The panel unanimously concludes that this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before: Ronald M. Gould and Kim McLane Wardlaw, Circuit Judges, and Mark L. Wolf, Senior District Judge.[**]

Opinion by Judge Wolf

## SUMMARY[***]

### Lanham Act

The panel affirmed the district court's entry of summary judgment and issuance of a permanent injunction in an action brought under the Lanham Act by Southern California Darts Association.

The panel affirmed the district court's rulings on threshold issues. It held that the district court had subject matter jurisdiction because even though Southern California Darts Association had not registered any trademarks, its claim arose under 15 U.S.C. § 1125, a provision of the Lanham Act that protects against infringement of unregistered marks and trade dress as well as registered marks. The panel held that even though Southern California Darts Association lacked the capacity to sue as a corporation because its corporate powers had been suspended by the State of California, it could bring suit in federal court as an

---

[**] The Honorable Mark L. Wolf, Senior District Judge for the United States District Court for the District of Massachusetts, sitting by designation.

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

unincorporated association for the purpose of enforcing a substantive right existing under the laws of the United States. The panel also held that Southern California Darts Association had standing to sue and that its motion for summary judgment was properly served on defendant Dino M. Zaffina.

The panel affirmed the district court's summary judgment in favor of Southern California Darts Association on its claim that Zaffina infringed its trademarks. The panel held that the contested marks were protectable as descriptive marks that had acquired secondary meaning and that Zaffina's use of the marks was likely to cause confusion. The panel also held that Southern California Darts Association owned the marks. It held that unincorporated associations have the capacity to own trademarks. In addition, Southern California Darts Association's use of the marks had been lawful, and it had not abandoned the marks.

Finally, the panel rejected Zaffina's arguments that Southern California Darts Association should be denied injunctive relief on the basis of unclean hands and that the district court erred by admitting a declaration into evidence.

---

## COUNSEL

Dino M. Zaffina, pro se, Los Angeles, California, for Defendant-Appellant.

James Kawahito and Timothy Patrick Hennessey, Kawahito Shraga & Westrick LLP, Los Angeles, California, for Plaintiff-Appellee.

---

## OPINION

WOLF, Senior District Judge:

The district court entered summary judgment for plaintiff-appellee Southern California Darts Association ("SoCal") and issued a permanent injunction enjoining defendant-appellant Dino M. Zaffina from using certain marks that have been used by SoCal for several decades. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. BACKGROUND

For forty years or more, SoCal has promoted the competitive play of the game of darts and has coordinated league play of this game. For a time, beginning in the 1960s, members of SoCal formed and ran a corporation named "Southern California Darts Association, Inc." (the "original SoCal corporation"). The corporate powers of the original SoCal corporation were suspended by the State of California in 1977, apparently for nonpayment of the corporate franchise tax. SoCal has, for many years, used the following marks: its full name ("Southern California Darts Association"); the acronym "SCDA"; the nickname "SoCal Darts"; and a logo featuring the organization's full name and a dart board.

Zaffina was once a member of SoCal. Zaffina and SoCal feuded in July 2010 over whether Zaffina's middle initial would be used in SoCal's weekly scoring reports, and Zaffina's membership in SoCal came to an end. It is unclear whether Zaffina renounced his SoCal membership or whether the organization expelled him. On January 3, 2011, Zaffina registered with the State of California a corporation named Southern California Darts Association, Inc. ("SoCal Inc."),

the same name once used by the original SoCal corporation. Zaffina appointed himself president and CEO of SoCal Inc. He then registered the internet domain name www.southerncaliforniadartsassociation.com and began to use it to promote SoCal Inc.

In August 2011, Zaffina and SoCal Inc. informed approximately three hundred darts-related businesses, by email, of SoCal Inc.'s existence. These businesses included the so-called "host pubs" in which the events organized by SoCal traditionally have been held. In September of the same year, Zaffina and SoCal Inc. sued multiple defendants in state court for hosting or participating in events while using SoCal's name and other marks.

On March 6, 2012, SoCal brought suit against Zaffina and SoCal Inc. in the United States District Court for the Central District of California. In its complaint, SoCal alleged violations of the Lanham Act and the California Business and Professions Code, common law trademark infringement, and unfair competition. SoCal also moved for a preliminary injunction.

On April 23, 2012, the district court granted SoCal's motion for a preliminary injunction, and enjoined Zaffina and SoCal Inc. from using SoCal's marks, using URLs containing these marks, and representing to the public that they have rights to these marks. *See* Apr. 23, 2012 Dist. Ct. Order ("PI Order"). On June 22, 2012, the district court denied Zaffina's motion for reconsideration of its decision to issue a preliminary injunction.

Zaffina and SoCal Inc. filed interlocutory appeals from the district court's preliminary injunction. While these

appeals were pending, the following developments occurred in the district court.

On August 20, 2012, the district court allowed a motion to withdraw filed by SoCal Inc.'s counsel, Robert Racine, Esq. The court ordered SoCal Inc. to retain new counsel within thirty days. When SoCal Inc. failed to do so, the district court struck SoCal Inc.'s answer to the complaint and ordered default to enter against it.

On February 22, 2013, the district court granted SoCal's motion for partial summary judgment against Zaffina on its Lanham Act claim. Although Zaffina had not filed an opposition to the motion for summary judgment, the district court examined the motion on the merits, and found it meritorious. *See* Feb. 22, 2013 Dist. Ct. Order ("SJ Order"). SoCal then moved to withdraw all of its additional claims against Zaffina.

On April 2, 2013, the district court entered final judgment against both defendants—against SoCal Inc. because of its default, and against Zaffina on the basis of the entry of summary judgment on SoCal's Lanham Act claim. The district court vacated its preliminary injunction and issued a permanent injunction. The permanent injunction again prohibited Zaffina, as well as any associated businesses, from using SoCal's marks, from using URLs containing these marks, and from representing to the public that they have rights to these marks. It also ordered Zaffina to: file a notice discontinuing or changing SoCal Inc.'s corporate name, file cancellations of all fictitious business name registrations using SoCal's marks, and destroy or turn over to SoCal all marketing products created by Zaffina for the purpose of promoting SoCal Inc. In addition, the district court found

Zaffina and SoCal Inc. jointly and severally liable to SoCal in the amount of $115,705.28 plus costs.[1]

The district court's final judgment mooted the appeals from the preliminary injunction. Consequently, on April 25, 2013, we dismissed those appeals.

Zaffina now appeals from the district court's Order entering summary judgment against him, offering a series of threshold challenges and several arguments on the merits.[2]

## II.  STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*. *See United States v. Arango*, 670 F.3d 988, 992 (9th Cir. 2012); *Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1226 n.8 (9th Cir. 2005).

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

---

[1] The district court subsequently granted SoCal's motion to hold Zaffina in contempt for failure to comply with the judgment (on July 17, 2013) and its motion to compel compliance with the court's order of contempt (on October 16, 2013).

[2] Zaffina also apparently seeks to renew his challenges to the district court's decisions to issue a preliminary injunction and to decline to reconsider its preliminary injunction. As we explained in our April 25, 2013 Memorandum Disposition, the district court's prior orders were superseded by the entry of final judgment, and cannot now be revisited. *See In re Estate of Ferdinand Marcos Human Rights Litig.*, 94 F.3d 539, 544 (9th Cir. 1996).

(1986).  Viewing the facts in the light most favorable to the nonmoving party, we must determine whether a genuine issue of material fact exists, and whether the district court applied the law correctly.  *See Fortyune v. Am. Multi–Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004).

An issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *George v. Morris*, 736 F.3d 829, 834 (9th Cir. 2013).  A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir. 2010). Evidence may be offered "to support or dispute a fact" on summary judgment only if it "could be presented in an admissible form at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003); Fed. R. Civ. P. 56(c)(2).

## III.   THRESHOLD ISSUES

Zaffina presents four threshold challenges to the district court's entry of summary judgment.  He argues that the district court lacked subject-matter jurisdiction, that SoCal lacks the capacity to sue, that SoCal lacks standing, and that Zaffina was not properly served with SoCal's motion for summary judgment.  These contentions are not correct.

### A.   *Jurisdiction*

Zaffina first challenges the district court's subject-matter jurisdiction.  He argues that SoCal's suit involves no question of federal law, because it implicates neither common-law trademark rights nor statutory trademark rights.  It does not

implicate common-law trademark rights, according to Zaffina, because "there is no federal common law of trademark infringement." Appellant's Br. at 8–9 (quoting *Toho Co., Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 791 (9th Cir. 1981)). SoCal's suit also does not implicate statutory trademark rights, Zaffina argues, because SoCal has not registered any of the contested marks.

This argument misapprehends the applicable law. The Lanham Act, 15 U.S.C. ch. 22, grants the federal district courts original jurisdiction over all actions arising under it. *See* 15 U.S.C. § 1121(a). Another statute grants the district courts jurisdiction over "any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." 28 U.S.C. § 1338(a).

The pertinent part of SoCal's complaint is based on the provision of the Lanham Act codified at 15 U.S.C. § 1125. This section, unlike certain other Lanham Act provisions, "protects against infringement of unregistered marks and trade dress as well as registered marks." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 n.8 (9th Cir. 1999); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). The elements of a cause of action under this provision, which are discussed below, do not include registration.

SoCal's claim does arise under the Lanham Act, therefore, notwithstanding the fact that SoCal has not registered any trademarks. Accordingly, the district court did have jurisdiction over SoCal's claim pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338.

### B.  *Capacity to Sue*

Zaffina's second threshold argument is that SoCal lacks the capacity to sue.  As noted earlier, the corporate powers of the original SoCal corporation were suspended in 1977, apparently because it failed to pay the state corporate franchise tax.  Zaffina contends that SoCal is, therefore, a "delinquent corporation" that lacks the capacity to sue.  He also asserts that under California law, a person conducting business under a fictitious business name may only sue once he has registered that name.

We have indeed held that, under California law, a delinquent corporation whose powers have been suspended "may not bring suit and may not defend a legal action." *United States v. 2.61 Acres of Land*, 791 F.2d 666, 668 (9th Cir. 1985).  However, California law is not dispositive in the present circumstances.

Capacity to sue in federal court is governed by Federal Rule of Civil Procedure 17(b).    Under this Rule, an individual's capacity to sue is determined by "the law of the individual's domicile"; a corporation's capacity to sue is determined by "the law under which it was organized"; and the capacity of "all other parties" to sue is determined by "the law of the state where the court is located."  Fed. R. Civ. P. 17(b)(1), (2), (3).  There are two exceptions to Rule 17(b)(3), however.  The first of these exceptions is relevant in the current case. Rule 17(b)(3)(A) states that a "partnership or other unincorporated association"  that lacks the capacity to sue under the law of the state in which the court is located "may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws."

The district court addressed SoCal's capacity to sue in its PI Order. For the purpose of its analysis, the district court assumed that SoCal is, in essence, the same entity as the original SoCal corporation. *See* PI Order at 3 n.2. The court correctly recognized, however, that even on this assumption, the suspension of the original corporation's powers does not necessarily extinguish SoCal's capacity to pursue federal claims in federal court.

This conclusion follows from our previous decisions in *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814 (9th Cir. 1996), and *Sierra Ass'n for Env't v. FERC*, 744 F.2d 661 (9th Cir. 1984). In both of those cases, corporations whose powers had been suspended under California law brought suit in federal court. *Idaho's High Desert* involved a "non-profit environmental education and advocacy organization" that had "forfeited its corporate charter . . . for failure to file an annual report." 92 F.3d at 817, 819. Our decision in *Sierra Ass'n* includes less factual detail, but the circumstances of that case appear to have been analogous to those of *Idaho's High Desert*. *See* 744 F.2d at 662.

In both cases, applying Federal Rule of Civil Procedure 17(b), we treated the plaintiffs as unincorporated associations. We explained that an "unincorporated association" is "a voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common objective." *Idaho's High Desert*, 92 F.3d at 820 (quoting *Local 4076, United Steelworkers v. United Steelworkers, AFL CIO*, 327 F. Supp. 1400, 1403 (W.D. Pa. 1971)). We held that as unincorporated associations, the plaintiffs in those cases were permitted to "sue in federal court, regardless of [their] capacity to sue under the law of the state in which the court sits, when [they were] suing 'for the purpose of

enforcing . . . a substantive right existing under the . . . laws of the United States.'" *Idaho's High Desert*, 92 F.3d at 819–20; *see Sierra Ass'n*, 744 F.2d at 662; *see also* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 9:11 (4th ed. 2014).

In its PI Order, the district court expressly found that SoCal is an organization formed by the consent of individuals who share a common cause and, therefore, is an unincorporated association. *See* PI Order at 2. The district court applied *Idaho's High Desert* and *Sierra Ass'n* to the facts of this case and determined correctly that, notwithstanding the suspension of the corporate powers of the original SoCal corporation, SoCal should now be classified as an unincorporated association. *See id.* The district court implicitly relied on this reasoning in its SJ Order. The evidence does not place in genuine dispute the district court's factual findings, and its legal conclusion was not wrong as a matter of law. *See Idaho's High Desert*, 92 F.3d at 820 ("For purposes of Rule [17(b)(3)(A)], the determination of what constitutes an 'unincorporated association' is a question of federal law."). The district court was, therefore, correct in concluding that SoCal had the capacity to bring its Lanham Act claim, at least, in federal court.

## C.  *Standing*

Zaffina also contends that SoCal lacks standing to sue, arguing that SoCal "is not the real party in interest." Rather, according to Zaffina, SoCal is a "straw plaintiff," and the real party in interest is David L. Irete, the current president of SoCal's board.

This argument is not meritorious.  Irete may be personally concerned with, and may have personally contributed to, SoCal's litigation.  The interests of non-natural legal persons commonly overlap with the interests of their officers and stakeholders.  The fact that the interests of other parties are implicated by a suit does not deprive an unincorporated association of standing.  "A plaintiff has standing if he or she has alleged a 'personal stake' in the litigation 'to justify exercise of the court's remedial powers on his behalf.'" *State of Nevada Employees' Ass'n, Inc. v. Bryan*, 916 F.2d 1384, 1391 (9th Cir. 1990) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977)).  SoCal has, through its agents, asserted a "personal" stake in this case, namely the fact that its trademarks have been misappropriated.  As we have previously held, "ownership of an unregistered trademark . . . is sufficient to establish standing under the Lanham Act." *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1226 (9th Cir. 2008).  Zaffina's contention that SoCal lacks standing to sue is, therefore, without merit.

## D.  *Service of Process*

Finally, Zaffina contends that SoCal's motion for summary judgment was not properly served on him.  SoCal served the motion, by messenger, at the address provided by Zaffina to the district court.  Zaffina argues, however, that the motion was delivered to "the 'receptionist' of the larger office" at that address, and that that receptionist "is not affiliated with Zaffina, [SoCal Inc.], or any of [Zaffina's] other businesses."  Zaffina admittedly received SoCal's motion by email on January 22, 2013, one month before the district court ruled on the motion.  However, he had not

consented to service by electronic means. *See* Fed. R. Civ. P. 5(b)(2)(E).

We have held that even where the party to be served received "actual notice" of the documents in question, the serving party must "demonstrate exceptional good cause for failing to comply with Rule 5(b)." *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1431 (9th Cir. 1996). SoCal did not fail to comply with Rule 5(b), however. A motion may be served by various methods that may not be used to serve a summons. *Compare* Fed. R. Civ. P. 4(e), *with* Fed. R. Civ. P. 5(b)(2). Among other methods, a litigant may serve a motion by "leaving it at [a] person's office with a clerk or other person in charge or, if no one is in charge, in a conspicuous place in the office." Fed. R. Civ. P. 5(b)(2)(B)(i).

In the circumstances, the receptionist at the business address that Zaffina had provided to the district court is reasonably deemed to be a "clerk or other person in charge" for the purposes of receiving documents. SoCal, therefore, properly effected service of its motion when its messenger delivered the motion to this receptionist. Its service was not deficient even if it is assumed that, for some reason, the motion was not ultimately conveyed to Zaffina. *See also* Fed. R. Civ. P. 5(b)(2)(C) (a motion may be served by "mailing it to the person's last known address—in which event service is complete upon mailing").

This last threshold challenge to the district court's Order is, therefore, also not meritorious.

## IV.  MERITS

The district court's entry of summary judgment was based on SoCal's Lanham Act claim, under 15 U.S.C. § 1125(a). This provision states, in part, that:

> Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion . . . shall be liable in a civil action . . . .

In order to prevail on a suit under this provision, a plaintiff must prove two basic elements: "(1) it has a valid, protectable trademark, and (2) [the defendant's] use of the mark is likely to cause confusion." *Applied Info. Sciences Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007); *see Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006).  The first of these basic elements is comprised of two sub-parts: the mark's protectability and the plaintiff's ownership of the mark.

Therefore, SoCal is entitled to summary judgment if the facts that are not genuinely disputed demonstrate: (a) that the contested marks are protectable; (b) that SoCal owns these marks; and (c) that Zaffina's use of these marks is likely to cause confusion.  We begin our analysis with the first and third of these elements, to which the district court gave careful attention.

### A.  *Protectability*

Whether a mark is protectable depends on its degree of "distinctiveness."  *See Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010).  There are five traditional categories of distinctiveness: "(1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful." *Id.* (citing *Two Pesos*, 505 U.S. at 768).  Generic marks are not eligible for trademark protection.  *See Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002). Descriptive marks become protectable if they acquire a "secondary meaning," by becoming distinctive "as used on or in connection with the applicant's goods in commerce." 15 U.S.C. § 1052(f); *see Two Pesos*, 505 U.S. at 769. Suggestive, arbitrary, and fanciful marks are automatically protectable.  *See id.* at 768; *Zobmondo Entm't*, 602 F.3d at 1113.

The district court, evidently categorizing SoCal's marks as "descriptive," found that these marks have acquired a "secondary meaning."  *See* SJ Order at 4.  The court based this finding, among other things, on SoCal's "acclaim in the darts community."  *Id.*  The court also noted Zaffina's admission, in documents presented by SoCal, that he had "deliberately appropriated SoCal's Marks precisely because of their strong reputation in the darts community as being associated with SoCal."  *Id.* (citing *Idaho's High Desert*, 92 F.3d at 823 ("Proof of exact copying, without any opposing proof, can be sufficient to establish a secondary meaning.")).  Zaffina does not appear to challenge these findings on appeal, and we find them to be correct.

## B. *Likelihood of Confusion*

The second element of SoCal's claim analyzed by the district court, likelihood of confusion, addresses "whether the similarity of the marks is likely to confuse customers about the source of the products" or services. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992). Eight factors are weighed to determine whether confusion is likely: (1) the strength of the mark; (2) the proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979); *Entrepreneur Media*, 279 F.3d at 1140. No single factor is determinative. Rather, "[i]t is the totality of facts in a given case that is dispositive." *Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987).

The district court conducted a careful likelihood-of-confusion analysis. The court addressed the eight *Sleekcraft* factors, and found, among other things, that the parties' marks are "identical in appearance, sound, and meaning," that the parties "offer identical services," that the parties use overlapping channels for marketing and advertising, that Zaffina intentionally selected his marks to capitalize on SoCal's reputation, and that at least one third party had actually been confused by Zaffina's use of the contested marks. The court concluded that Zaffina's use of SoCal's marks is likely to cause confusion. This conclusion is also not apparently challenged on appeal, and we find it, too, to be correct.

### C.  *Ownership*

A party's ownership of a protectable mark is determined on the basis of "priority of use in commerce."  That is, "the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1203 (9th Cir. 2012) (quoting *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996)); *see also* 15 U.S.C. § 1127 (determining when "a mark shall be deemed to be in use in commerce").

It is undisputed that SoCal was the first to use the contested marks in its business-related dealings.  However, Zaffina offers a series of challenges to the conclusion that SoCal, therefore, owns these marks.  He argues that SoCal lacks the capacity to own trademarks, that its use of its marks in commerce has not been lawful, and that it has abandoned its marks.  None of these contentions is correct.

### 1.  *Capacity to Own Trademarks*

The district court evidently assumed that SoCal has the legal capacity to own trademarks.  This assumption cannot necessarily be inferred, however, from the fact that SoCal has the capacity to sue.  Rule 17(b)(3)(A) of the Federal Rules of Civil Procedure allows unincorporated associations to vindicate "substantive right[s] existing under the United States Constitution or laws," but it does not define or create any substantive rights.

We hold that unincorporated associations do, indeed, have the capacity to own trademarks.  This conclusion is implicit in our decision in *Idaho's High Desert*.  There, although we

did not expressly address the issue, we upheld a judgment for trademark infringement in favor of an unincorporated association. *See* 92 F.3d at 820–23. We now expressly adopt the implicit holding of *Idaho's High Desert*.

Questions may arise as to whether specific unincorporated associations, particularly those operating not for profit, may be said to be using their marks "in commerce." *See* 15 U.S.C. § 1127 (determining when "a mark shall be deemed to be in use in commerce"); *Rearden*, 683 F.3d at 1203 ("the party claiming ownership must have been the first to actually use the mark in the sale of goods or services"); *Sengoku Works*, 96 F.3d at 1219 (same). There is no reason, however, why such questions in specific circumstances should preclude the universe of unincorporated associations from owning trademarks. As explained earlier, an unincorporated association is "a voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common objective." *Idaho's High Desert*, 92 F.3d at 820 (quoting *Local 4076*, 327 F. Supp. at 1403). An entity of this character may engage in commercial activities, and may use names and marks in connection with those activities. *Cf. Am. Gold Star Mothers v. Nat'l Gold Star Mothers*, 191 F.2d 488, 489 (D.C. Cir. 1951) (stating that "reputation and good will are as important to eleemosynary institutions as they are to business organizations"); *Purcell v. Summers*, 145 F.2d 979, 985 (4th Cir. 1944) (examining the applicability of goodwill-related doctrines to religious and charitable organizations).

Persuasive authority supports the rule endorsed implicitly in *Idaho's High Desert*. The Seventh Circuit has stated that "[a]ny person, partnership, corporation, or unincorporated association capable of holding title to personalty may acquire

the right to a trade mark." *U.S. Ozone Co. v. U.S. Ozone Co. of Am.*, 62 F.2d 881, 885 (7th Cir. 1932). Other courts have tacitly found that standard trademark law applies to the trademark claims of unincorporated associations. *See, e.g.*, *Gen. Conference Corp. of Seventh Day Adventists v. McGill*, 617 F.3d 402 (6th Cir. 2010); *Third Educ. Grp., Inc. v. Phelps*, 675 F. Supp. 2d 916 (E.D. Wis. 2009); *Birthright v. Birthright Inc.*, 827 F. Supp. 1114, 1120 (D.N.J. 1993).

We hold, therefore, that unincorporated associations have the capacity to own trademarks. Accordingly, the district court's assumption that SoCal has the capacity to own the contested marks was correct.

### 2. *Unlawful Use in Commerce*

Zaffina argues that SoCal is not entitled to trademark protection because its use of the marks in question has not been "lawful." He alleges that SoCal has neglected to register as a corporation since 1977, and that it has violated various laws, primarily tax laws.

We have held that "only *lawful* use in commerce can give rise to trademark priority." *CreAgri, Inc. v. USANA Health Sciences, Inc.*, 474 F.3d 626, 630 (9th Cir. 2007); *see also United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1225 (10th Cir. 2000) (discussing the "well-reasoned proposition that shipping goods in violation of federal law cannot qualify as the 'use in commerce' necessary to establish trademark rights"). However, we explained in *CreAgri* that unlawful conduct would not preclude trademark protection if it was "immaterial," namely if it was not "of such gravity and significance that the usage [of the mark] . . . as a matter of law, [can] create no trademark rights."

474 F.3d at 633 (quoting *Gen. Mills Inc. v. Health Valley Foods*, 24 U.S.P.Q.2d 1270, 1274 (T.T.A.B. 1992)). We also noted that trademark protection might not be withheld on account of unlawful conduct that is "collateral," namely where there is an insufficient nexus between the unlawful behavior and the use of the mark in commerce. *See id.* at 631–33 (citing *Satinine Societa in Nome Collettivo di S.A. v. P.A.B. Produits et Appareils de Beaute*, 209 U.S.P.Q. 958, 967 (T.T.A.B. 1981)).

As explained earlier, SoCal was properly found to be an unincorporated association, and an unincorporated association can own trademarks. Even assuming that SoCal unlawfully failed to pay taxes, its misconduct would be unrelated to the purpose of the federal trademark laws and, therefore, collateral and immaterial. *Cf. CreAgri*, 474 F.3d at 630 (denying trademark protection to a company that had violated federal law in becoming the first to use the mark in commerce because to do otherwise would put the government in the "'anomalous position' of extending the benefits of trademark protection to a seller based upon actions the seller took in violation of that government's own laws").

More significantly, Zaffina has offered only unsubstantiated accusations of SoCal's alleged illegal acts. SoCal does not dispute that it has remained unincorporated for many years. However, this fact alone is not sufficient to prove that it has acted unlawfully. Although SoCal may have, at times, incorrectly presented itself as a corporation, Zaffina presents no evidence to support his allegations of tax violations or similar violations of law. There is, therefore, no basis upon which a reasonable fact finder could conclude that SoCal's use of the contested marks has been "unlawful," let alone unlawful in a relevant way. Accordingly, there was no

error in the district court's determination that SoCal's use of the contested marks entitles it to trademark protection.

### 3.  *Abandonment*

Next, Zaffina contends that SoCal has abandoned any trademarks it once owned.  Generally speaking, a mark is abandoned "[w]hen its use has been discontinued with intent not to resume such use."  15 U.S.C. § 1127.  Zaffina argues that SoCal's marks have been abandoned because "[t]he defunct corporation has not legally been in business for over 35 years."  This argument is evidently premised on the theory that an unincorporated association cannot own trademark rights.  As explained earlier, this theory is incorrect.  *Idaho's High Desert*, 92 F.3d at 819–20, indicates that an unincorporated association can own trademark rights, and we now so find explicitly.  There is, therefore, no evidence to support the contention that SoCal abandoned its marks when the corporate powers of the original SoCal corporation were suspended or, indeed, at any other time.

### D.  *Other Issues*

Finally, Zaffina challenges the district court's grant of summary judgment on two grounds that are not tied to any specific prong of SoCal's Lanham Act claim.

### 1.  *Unclean Hands*

Zaffina asserts that SoCal should be denied injunctive relief on the basis of the doctrine that "[h]e who comes into equity must come with clean hands."  *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 241 (1933).  According to Zaffina, this rule is applicable because SoCal has violated

various laws and because it has neglected to register as a corporation since 1977.

This argument is unmeritorious for reasons that correspond to the flaws in Zaffina's contention that SoCal's use of its marks in commerce has not been "lawful." First, and most crucially, the argument lacks a factual foundation. Zaffina's accusations to the effect that SoCal's hands are unclean are not supported by evidence. In addition, the unclean hands doctrine would not be applicable even if Zaffina's allegations were properly supported. This doctrine pertains only to misdeeds that have an "immediate and necessary relation to the equity that [a plaintiff] seeks in respect of the matter in litigation." *Keystone Driller Co.*, 290 U.S. 240 at 245. "What is material," in other words, "is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendant." *Republic Molding Corp. v. B. W. Photo Utils.*, 319 F.2d 347, 349 (9th Cir. 1963); *see Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 870 (9th Cir. 2002). Because the misconduct alleged by Zaffina does not bear any "immediate and necessary relation" to the manner in which SoCal acquired its rights or to the equities of this case, the unclean hands doctrine is inapplicable.

### 2. *Evidence Considered*

Zaffina also contends that the district court should not have admitted into evidence a declaration prepared by Irete, the president of SoCal's board. The district court cited Irete's declaration several times in its SJ Order. Zaffina argues that Irete's declaration contains factual claims that exceed the realm of Irete's personal knowledge.

"Evidentiary rulings are reviewed for an abuse of discretion and should not be reversed absent some prejudice." *Defenders of Wildlife v. Bernal*, 204 F.3d 920, 927–28 (9th Cir. 2000); *see McEuin v. Crown Equip. Corp.*, 328 F.3d 1028, 1032 (9th Cir. 2003). Zaffina has established neither an abuse of discretion nor prejudice. Irete's declaration was cited by the district court in support of propositions that appear to be undisputed. *See also* 28 U.S.C. § 2111 (appellate courts are to disregard "errors or defects which do not affect the substantial rights of the parties"); Fed. R. Civ. P. 61 (an error in admitting or excluding evidence is generally not a ground for disturbing a judgment or an order). Therefore, this final contention, too, lacks merit.

## V.  CONCLUSION

We find no error in the district court's entry of summary judgment.

**AFFIRMED.**