**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JORDAN SPATZ Ph. D., M.D., | No. 24-2997 |
| *Plaintiff - Appellant*, | D.C. No. 3:21-cv-09605-LB |
| v. | |
| REGENTS OF THE UNIVERSITY OF CALIFORNIA, | OPINION |
| *Defendant - Appellee*. | |

Appeal from the United States District Court
for the Northern District of California
Laurel D. Beeler, Magistrate Judge, Presiding

Argued and Submitted June 2, 2025
San Francisco, California

Filed August 18, 2025

Before: Consuelo M. Callahan, Bridget S. Bade, and Lucy
H. Koh, Circuit Judges.

Opinion by Judge Koh

# SUMMARY[*]

## Age Discrimination Act

Affirming the district court's grant of summary judgment for the Regents of the University of California on Jordan Spatz's claims under the Age Discrimination Act of 1975, the panel held that the Age Act did not apply to the University of California San Francisco's refusal to admit Spatz to its neurological surgery residency program.

Spatz alleged that he was denied admission to the medical residency program due to age-based discrimination and retaliation.  By its terms, the Age Act exempts from its coverage "any employment practice of any employer."  Giving the terms "employer" and "employment practice" their ordinary common-law meaning, the panel concluded that ranking medical residents is an employment practice to which the Age Act does not apply.  To the extent that Spatz's Age Act claim is not barred, Spatz failed to demonstrate a genuine issue of material fact.

## COUNSEL

Dow W. Patten (argued), Forthright Law PC, San Francisco, California, for Plaintiff-Appellant.

Don Willenburg (argued), Gordon Rees Scully Mansukhani LLP, Walnut Creek, California; Michael D. Bruno and

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Rachel Wintterle, Gordon Rees Scully Mansukhani LLP, San Francisco, California; for Defendant-Appellee.

## OPINION

KOH, Circuit Judge:

Plaintiff-appellant Jordan Spatz appeals the district court's grant of summary judgment for defendant-appellee the Regents of the University of California on plaintiff's claims under the Age Discrimination Act of 1975, 42 U.S.C. § 6101 *et seq.* (the "Age Act").[1] In the district court, plaintiff alleged that he was improperly denied admission to a medical residency program at the University of California San Francisco ("UCSF") due to age-based discrimination and retaliation. For the reasons set forth below, we conclude the Age Act does not apply to UCSF's refusal to admit plaintiff to its medical residency program and we accordingly affirm the district court.

## I.

Plaintiff Dr. Jordan Spatz graduated from UCSF's medical school in 2021. At the time of his graduation, plaintiff was 36 years old. In 2017 and 2018, while plaintiff was in medical school, plaintiff was purportedly subject to two instances of harassment based upon his age. Plaintiff reported both incidents to the school, but it declined to investigate. Plaintiff's performance in medical school was mixed. Plaintiff received positive performance evaluations

---

[1] Plaintiff does not appeal the dismissal of his non-Age Act claims, and accordingly we do not address them.

in many of his classes and clinical internships but received some negative evaluations as well, particularly in connection with his sub-internships. Although the parties dispute exactly how well plaintiff performed, plaintiff concedes that, overall, his grades in medical school were "middle of the pack."

Medical school graduates must complete a residency program at a certified institution before they can become fully licensed doctors. Medical students are placed in residency programs through the National Resident Matching Program (the "Match"). As part of this process, medical schools rank the applicants they would like to accept into their program, and applicants do the same with respect to the medical school residency programs they would like to join. These rankings are then fed into a centralized algorithm which matches students with programs based on a variety of factors. There is no guarantee that every medical student will be matched with a residency program.

Plaintiff first applied to medical residency programs in the 2020 match year. In that year, plaintiff ranked 18 neurological surgery programs and listed UCSF's neurological surgery program as his first choice. However, plaintiff was not accepted into any medical residency program, either at UCSF or elsewhere. Plaintiff applied to residency at UCSF and elsewhere again in 2021, and he again failed to match with any program. It is undisputed that UCSF did not rank plaintiff in either year. Plaintiff claims, and defendant does not dispute, that had UCSF ranked plaintiff in either year he would have matched with its program.

Plaintiff claims that UCSF's refusal to rank him, and by extension accept him into UCSF's neurological surgery

residency program, was the product of age-based discrimination and retaliation. To support this accusation, plaintiff cites various statements made by interviewers that are indicative of age-based animus, a written interview evaluation indicating that plaintiff's age was an area of concern, and conversations plaintiff had with UCSF faculty that suggested to plaintiff that his age was discussed during the meeting where faculty ranked residency candidates.

Plaintiff also claims that his non-ranking was in retaliation for reports of discrimination he had previously made to the school. First, plaintiff claims he was retaliated against for reporting the two instances of age-based harassment in 2017 and 2018. Second, plaintiff claims he was retaliated against for filing a formal complaint of discrimination in February 2020, which alleged that plaintiff's age, disability, and birth in the United States was playing a determinative role in UCSF's residency selection process. In response to this 2020 complaint, UCSF investigated plaintiff's allegations of disability and national origin discrimination and found no wrongdoing. However, UCSF did not investigate the allegations of age-based discrimination.[2]

---

[2] Beyond his non-ranking to UCSF's medical residency program, plaintiff identifies only two other allegedly discriminatory or retaliatory acts: (1) plaintiff was removed from the website of the laboratory of Dr. Manish Aghi where plaintiff worked while he was a student at UCSF, and (2) plaintiff was denied authorship credit on articles that he was purportedly promised by Dr. Aghi. However, undisputed evidence suggests that neither act was the product of discriminatory or retaliatory animus. Instead, it is undisputed that plaintiff was removed from the website as the result of an inadvertent mistake, and was not given authorship credit on the papers in question because plaintiff did not meet the preexisting objective criteria for obtaining such credit. It is also

In contrast, defendant claims that plaintiff failed to match with UCSF's program because he had mediocre grades and performed poorly during his sub-internships. Defendant cites various documents that corroborate this purportedly poor performance. Defendant also highlights that UCSF's neurosurgery residency program accepts only 3 or 4 residents per year out of an applicant pool of over 300, amounting to a 1% acceptance rate. Moreover, defendant put forward declarations of participants in the match selection meeting generally stating that plaintiff's age was not discussed at the meeting, the declarant either did not know about or did not consider plaintiff's complaints of age discrimination, and, with one exception, age played no role in their decision-making process.

After plaintiff failed to match with UCSF in 2022, and he was not given an interview by the school, plaintiff filed the instant lawsuit. Plaintiff's complaint asserted seven causes of action: (1) age discrimination in violation of the Age Act, 42 U.S.C. § 6101 *et seq.*; (2) age discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 *et seq.*; (3) disability discrimination in violation of the FEHA; (4) harassment in violation of the FEHA; (5) retaliation in violation of the FEHA; (6) failure to prevent discrimination and retaliation in violation of the FEHA; and (7) whistleblower retaliation in violation of California Health & Safety Code § 1278.5.[3]

---

undisputed that plaintiff was added back on to the website once the error was pointed out, and plaintiff was given the opportunity to appear as an author on other papers where he did meet the authorship criteria.

[3] While the case was pending, plaintiff moved for a preliminary injunction, seeking an order to either place him in a neurosurgery residency at UCSF or create a new neurosurgery residency position for him. The district court denied plaintiff's motion and a motions panel of

After discovery, defendant moved for summary judgment on all of plaintiff's claims. Plaintiff's opposition addressed solely his Age Act claim.

The district court granted defendant's motion in its entirety. With respect to plaintiff's Age Act claim, the district court concluded that the Age Act does not apply to the residency selection process because it constitutes an "employment practice" beyond the scope of the Act. The district court further found that, even if the Age Act were applicable, there was no genuine dispute of material fact as to the merits of that claim. Finally, the district court concluded that summary judgment was appropriate on plaintiff's remaining claims because he did not oppose defendant's motion and had not otherwise presented sufficient evidence to support those claims. This appeal followed.

## II.

The threshold question we must address is whether the Age Act applies to the challenged conduct. By its terms, the Age Act exempts from its coverage "any employment practice of any employer." 42 U.S.C. § 6103(c)(1). As set forth more fully below, we conclude that the decision not to admit plaintiff to UCSF's neurological surgery residency program constitutes an "employment practice of an[] employer" and the Age Act accordingly does not apply to

---

this court affirmed in a memorandum disposition. *See Spatz v. Regents of Univ. of Cal.*, 2023 WL 5453456, at *1 (9th Cir. Aug. 24, 2023). In a footnote, that order noted that the Age Act may not even apply to plaintiff's claim if the residency ranking constituted an "employment practice," but ultimately declined to resolve the issue. *Id*. at *1 n.1.

the conduct challenged by plaintiff. We therefore affirm the district court's grant of summary judgment.

## A.

The district court's grant of summary judgment is reviewed *de novo*. *See Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1259 (9th Cir. 2021). "Summary judgment is appropriate if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "Viewing the facts in the light most favorable to the nonmoving party, [the court] must determine whether a genuine issue of material fact exists, and whether the district court applied the law correctly." *Id.*

## B.

The sole claim at issue on appeal asserts violations of the Age Act. The Age Act states that "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102. A private cause of action was added to the Age Act in 1978, permitting "any interested person" to sue "to enjoin a violation of th[e] Act by any program or activity receiving Federal financial assistance" and to recover "reasonable attorney's fees." 42 U.S.C. § 6104(e)(1).

The Age Act stands in contrast to the Age Discrimination in Employment Act of 1967 ("ADEA"), which generally prohibits age-based employment discrimination and is only indirectly relevant here. The ADEA makes it unlawful for an employer to, among other things, "fail or refuse to hire or to

discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Unlike the Age Act, an ADEA plaintiff may also recover damages for violations of the ADEA. *See* 29 U.S.C. § 626(c). Significantly, however, the ADEA's protections are categorically "limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a).

Plaintiff was under 40 at the time of the relevant conduct and accordingly could not rely on the ADEA to pursue his claims. Plaintiff instead brought suit under the Age Act, which has no similar requirement that the plaintiff be at least 40 years of age for it to apply. However, the Age Act contains another limitation that is significant here.

The Age Act provides that "[n]othing in this chapter shall be construed to authorize action under this chapter by any Federal department or agency with respect to any employment practice of any employer, employment agency, or labor organization, or with respect to any labor-management joint apprenticeship training program." 42 U.S.C. § 6103(c)(1); *see also* 45 C.F.R. § 90.3(b)(2) ("The Age Discrimination Act of 1975 does not apply to . . . [a]ny employment practice of any employer, employment agency, labor organization, or any labor-management joint apprenticeship training program, except for any program or activity receiving Federal financial assistance for public service employment under the Comprehensive Employment and Training Act of 1974 (CETA), (29 U.S.C. 801 *et seq.*).". The Age Act further provides that "[n]othing in this chapter shall be construed to amend or modify the [ADEA] . . . or to affect the rights or responsibilities of any person or party pursuant to" that act. 42 U.S.C. § 6103(c)(2).

Accordingly, insofar as the conduct challenged by plaintiff constitutes an "employment practice of any employer," the Age Act does not apply.[4]

## C.

The central question is whether the decision not to accept plaintiff into UCSF's neurological surgery residency program constitutes an "employment practice of any

---

[4] Plaintiff does not dispute that the Age Act does not apply to "employment practice[s] of any employer." 42 U.S.C. § 6103(c)(1). However, it is worth noting that Section 6103(c)(1), which exempts "employment practice[s] of any employer" from the Age Act, is worded such that it arguably only applies to actions brought by "any Federal department or agency" and not to suits by private plaintiffs to enforce the Age Act. *Id.* Notwithstanding this phrasing, every district court that has addressed the question has found that Section 6103(c)(1)'s limitation on the scope of the Age Act applies to suits brought by private parties as well. *See Kamakeeaina v. Armstrong Produce, Ltd.*, No. 18-cv-00480, 2019 WL 1320032, at *4 (D. Haw. Mar. 22, 2019) ("Although this language could be construed as limiting only a federal department or agency from bringing an action against an employer, the Court agrees with, as far as this Court can tell, every district court to have addressed the issue that an individual also does not have authority to bring an action under the Age Discrimination Act against an employer." (citation omitted)). We agree.

The language of Section 6103(c)(1) was included in the original version of the Age Act when it was passed in 1975. *See* Older Americans Amendments of 1975, Pub. L. No. 94-135, 89 Stat. 713, 729–30, § 304(c)(1). When the Age Act was first passed, the Act did not contain a private right of action, and accordingly it makes sense that Section 6103(c)(1)'s limitation applied only to the federal agencies, who were its sole enforcers. When a private right of action was added in 1978, Congress did not amend Section 6103(c)(1), but there is no indication Congress thereby intended to permit Age Act suits by private parties against employers concerning their employment practices. *See* Comprehensive Older Americans Act Amendments of 1978, Pub. L. No. 95-478, 92 Stat. 1513, 1555–56, § 401(c).

employer." 42 U.S.C. § 6103(c)(1). Neither the Age Act nor its implementing regulations define the terms "employer" or "employment practice." *See* 42 U.S.C. § 6107; 45 C.F.R. § 90.4. Nor do the parties cite any case construing these terms in the context of the Age Act. We accordingly give these terms their ordinary common-law meaning. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–23 (1992) (stating that when "asked to construe the meaning of 'employee' where the statute containing the term does not helpfully define it," courts typically infer that Congress intended to incorporate the common-law meaning of the term); *Cmty. for Creative Non–Violence v. Reid*, 490 U.S. 730, 739–40 (1989) (similar). Adopting the common law definition of these terms is particularly appropriate given that we have previously adopted a common-law agency test in construing the term "employee" under the ADEA. *See Barnhart v. N.Y. Life Ins. Co.*, 141 F.3d 1310, 1312–13 (9th Cir. 1998). The Age Act picks up where the ADEA leaves off, governing non-employment age discrimination by recipients of federal funding. *See* 42 U.S.C. § 6103(c). The Age Act and ADEA are accordingly *in pari materia* and should "be construed as if they were one law." *California v. Trump*, 963 F.3d 926, 947 n.15 (9th Cir. 2020) (quoting *Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972)); *see id.* ("[S]tatutes addressing the same subject matter should be construed *in pari materia*." (citation and internal quotation marks omitted)).

At common law, an "employee" is generally defined as "[s]omeone who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance." *Employee*, Black's Law Dictionary (12th ed. 2024); *see also* Restatement (Second) of Agency

§ 220(1) ("A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control."). An employer is "[a] person, company, or organization for whom someone works; esp., one who controls and directs a worker under an express or implied contract of hire and who pays the worker's salary or wages." *Employer*, Black's Law Dictionary (12th ed. 2024). In the ADEA context, courts consider the following factors to determine if an individual is an employee:

> 1) the skill required; 2) source of the instrumentalities and tools; 3) location of the work; 4) duration of the relationship between the parties; 5) whether the hiring party has the right to assign additional projects to the hired party; 6) the extent of the hired party's discretion over when and how long to work; 7) the method of payment; 8) the hired party's role in hiring and paying assistants; 9) whether the work is part of the regular business of the hiring party; 10) whether the hiring party is in business; 11) the provision of employee benefits; and 12) the tax treatment of the hired party.

*Barnhart*, 141 F.3d at 1312–13 (quoting *Darden*, 503 U.S. at 323–24).

Although the record here is not as well developed as it could be, virtually every one of the factors above suggests that ranking medical residents is akin to hiring an employee:

> **1):** residency requires substantial skill, including a degree from a medical school;
>
> **2) & 3):** the hospital provides both the "instrumentalities" and "location" of work;
>
> **4)**: the "duration" of the residency is long, lasting upwards of four years;
>
> **5), 6), 9) & 10):** medical residents work extremely long hours—up to 80 hours a week—and are directly responsible for providing patient care, which suggests medical residents are "part of the regular business of the" hospital and the hospital has substantial control over the work residents perform; and
>
> **7), 11) & 12):** medical residents are paid a salary, provided with benefits by UCSF, and are taxed as employees. *See Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 48, 60 (2011) (discussed below).

Precedent likewise reinforces that residency bears many similarities to employment. The United States Supreme Court has found that medical residents can be treated as employees, rather than students, for purposes of taxation under the Federal Insurance Contributions Act. *See Mayo*, 562 U.S. at 60. The California Supreme Court has found that

medical residents are employees entitled to collective bargaining rights under state law. *See Regents of Univ. of Cal. v. Pub. Emp. Rels. Bd.*, 715 P.2d 590, 593–605 (Cal. 1986) ("[A]lthough [residents] did receive educational benefits in the course of their programs, this aspect was subordinate to the services they performed."). The NLRB has reached the same conclusion under federal law. *See Bos. Med. Ctr. Corp.*, 330 N.L.R.B. 152, 160–61 (1999) ("Almost without exception, every other court, agency, and legal analyst to have grappled with this issue has concluded that interns, residents, and fellows are, in large measure, employees."). Finally, the California Court of Appeals has held that the decision to dismiss a medical resident from a residency program was not entitled to academic deference— as would be true if a typical student were involved—because "the predominant relationship between a medical resident and a hospital residency program is an employee-employer relationship." *Khoiny v. Dignity Health*, 76 Cal. App. 5th 390, 396, 399–403 (2022) (noting that residents are "paid ordinary taxable income," "much of the service [residents] provide is indistinguishable from that provided by fully licensed physicians" and "residents have been found to spend 75 percent to 80 percent of their time providing services to the medical centers or hospitals").

Ultimately, we need not definitively categorize medical residents as employees or students to resolve the case before us. Instead, we hold that ranking medical residents is an employment practice to which the Age Act does not apply.**[5]**

---

[5] Our holding today follows from the text of the Age Act. We acknowledge that there are educational aspects of medical residency that may have different ramifications for other statutes. *See, e.g.*, *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 557 (3d Cir. 2017) (concluding

Plaintiff offers two arguments in response, neither of which is persuasive.

*First*, plaintiff argues that the "legislative and regulatory history" of the Age Act "demonstrates its specific application to Medical Schools." Plaintiff's reply brief seemingly quotes legislative history that suggests the Age Act was enacted, in part, in response to medical schools refusing to admit older applicants, but plaintiff does not actually provide any citations to the documents being quoted. When asked about the source of these quotes at oral argument, plaintiff's counsel was unable to provide any clarification. Plaintiff's failure to provide appropriate citations is sufficient grounds to disregard this argument. *See* Fed. R. App. P. 28(a)(8)(A) (stating that an appellate brief "must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

Even setting this aside, taken on its own terms the argument lacks merit. A handful of scattered citations to legislative history cannot overcome the clear text of the Age Act. And the language quoted by plaintiff refers only to "medical schools," but says nothing about medical residency programs. So even if the Age Act applies to the admission of medical students to medical schools, a question we are not called on to consider, it does not follow that it also covers admission to medical residency programs.

*Second*, plaintiff argues that the relevant discrimination occurred while he was a student in UCSF's medical school,

---

that plaintiff plausibly alleged medical residency program constituted "education program or activity" for purposes of Title IX); *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 897 (1st Cir. 1988) (similar). We express no view on this matter.

rather than a medical resident, and so the Age Act applies to the conduct. This misunderstands the relevant inquiry. The question is not whether plaintiff was a student at the time of the relevant conduct. Rather, the question is whether UCSF's refusal to rank (i.e., to hire) plaintiff was an "employment practice of an employer." 42 U.S.C. § 6103(c)(1). Insofar as medical residents are employees, and the hospital is their employer, the decision not to select plaintiff for residency at UCSF constitutes an "employment practice of an employer" exempt from the Age Act, regardless of plaintiff's status as a medical student at the time the conduct occurred.

To be sure, some of the allegedly discriminatory conduct identified by plaintiff—such as Dr. Aghi's refusal to credit plaintiff for publications or plaintiff's removal from Dr. Aghi's laboratory's website—is arguably independent from plaintiff's non-admission to medical residency, and so to that extent could form the basis of a claim for violation of the Age Act. However, defendants have offered evidence establishing non-discriminatory and non-retaliatory reasons for this independent conduct that plaintiff has failed to refute. *See supra* note 2. Accordingly, the district court also correctly granted summary judgment on plaintiff's claim with respect to this conduct.

## III.

For the reasons discussed above, the district court correctly granted defendants' motion for summary judgment.

**AFFIRMED.**